**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

DANIEL CAMPBELL; et al,[*]
 *Plaintiffs-Appellants*,

v.

CITY OF LOS ANGELES,
 *Defendant-Appellee.*

No. 15-56990

D.C. No.
2:04-cv-08592-
AG-AJW

---

CESAR MATA,
 *Plaintiff*,

and

RICHARD D. ALBA; et al.,
 *Plaintiffs-Appellants,*

v.

CITY OF LOS ANGELES,
 *Defendant-Appellee.*

No. 16-55002

D.C. No.
2:07-cv-06782-
AG-AJW

OPINION

Appeal from the United States District Court
for the Central District of California
Andrew J. Guilford, District Judge, Presiding

---

[*] Due to the number of parties in these appeals, the individual parties are listed in the attached Appendix.

Argued and Submitted November 8, 2017
Pasadena, California

Filed September 13, 2018

Before:  Richard Linn,[**] Marsha S. Berzon,
and Milan D. Smith, Jr., Circuit Judges.

Opinion by Judge Berzon

**SUMMARY**[***]

**Labor Law**

The panel affirmed the district court's decertification of two related collective actions brought under the Fair Labor Standards Act by officers of the Los Angeles Police Department, alleging a pervasive, unwritten policy discouraging the reporting of overtime.

The district court granted the City's motion for decertification and dismissed the officers without prejudice to refiling their FLSA claims individually.  The original plaintiffs in the two decertified actions then reached settlements with the City on their own claims, and the district court entered final judgment.  Although no longer plaintiffs at that point, the officers filed timely appeals from final

---

[**] The Honorable Richard Linn, United States Circuit Judge for the U.S. Court of Appeals for the Federal Circuit, sitting by designation.

[***] This summary constitutes no part of the opinion of the court.  It has been prepared by court staff for the convenience of the reader.

judgment, challenging their decertification and dismissal. Agreeing with the Eleventh Circuit, and disagreeing with the Third Circuit, the panel held that the officers had standing to appeal because opt-in plaintiffs are parties to the collective action, and an order of decertification and dismissal disposes of their statutory right to proceed collectively. They therefore have standing to appeal and may do so after the interlocutory decertification order to which they are adverse merges with final judgment.

The panel further held that the collective actions were properly decertified and the officers properly dismissed for failure to satisfy the "similarly situated" requirement of the FLSA. Rejecting other approaches to this requirement, the panel held that party plaintiffs are similarly situated, and may proceed as a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims. Addressing post-discovery decertification, the panel held that, when decertification overlaps with the merits of the underlying FLSA claims, the summary judgment standard applies. The panel concluded that the officers failed, as a matter of law, to create a triable question of fact regarding the existence of a department-wide policy or practice. In the absence of such a policy or practice, and in the absence of allegations of any other similarity of law or fact material to the disposition of the officers' claims, the officers were not "similarly situated" within the meaning of the FLSA.

## COUNSEL

Gregory Glenn Petersen (argued), Gregory G. Petersen A Law Corporation, Santa Ana, California, for Plaintiffs-Appellants.

Brian P. Walter (argued), Geoffrey S. Sheldon, David A. Urban, and Danny Y. Yoo, Liebert Cassidy Whitmore, Los Angeles, California; for Defendant-Appellee.

## OPINION

BERZON, Circuit Judge:

The present appeal arises from the decertification of a pair of related collective actions brought under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 207. Between 2004 and 2009, roughly 2,500 officers ("the Officers") of the Los Angeles Police Department ("the Department") opted into two collective actions alleging a pervasive, unwritten policy discouraging the reporting of overtime. After notice to potential collective action members and several years of discovery, the government defendant, the City of Los Angeles ("the City"), moved for decertification of the collective actions on the ground that the Officers within each were not "similarly situated" within the meaning of section 16(b) of the FLSA, 29 U.S.C. § 216(b). According to the City, if any Officers were denied pay for their earned overtime, it was due to unrelated instances of worksite- and supervisor-specific misconduct, rather than a single, Department-wide policy or practice.

The district court granted the City's motion for decertification and dismissed the Officers without prejudice

to refiling their FLSA claims individually.[1]  The original plaintiffs in the two decertified actions then reached settlements with the City on their own claims, and the district court entered final judgment.  Although no longer plaintiffs at that point, the Officers filed timely appeals from final judgment, challenging their decertification and dismissal.

We are asked first whether the Officers can appeal a decertification order when they were dismissed from the collective action before final judgment and without prejudice to their individual FLSA claims.  We hold that they can.  Opt-in plaintiffs are parties to the collective action, and an order of decertification and dismissal disposes of their statutory right to proceed collectively.  They therefore have standing to appeal and may do so after the interlocutory decertification order to which they are adverse merges with final judgment.

We are asked next whether the collective actions here were properly decertified and the Officers properly dismissed for failure to satisfy the "similarly situated" requirement of the FLSA.  We hold that they were.  Although the district court erred in its interpretation of the "similarly situated" requirement and in the standard it applied in evaluating decertification, a de novo review of the record reflects that the Officers failed, as a matter of law, to create a triable question of fact regarding the existence of a Department-wide policy or practice.  In the absence of such a policy or practice, and in the absence of allegations of any other similarity of law or fact material to the disposition of

---

[1] The City filed a motion for decertification in each case.  The motions were identical, as were the orders granting them, so we refer to them in the singular.

the Officers' claims, the Officers were not "similarly situated" within the meaning of the FLSA.

# I

Because much of this case turns on terminology and procedures specific to the FLSA, we begin with a brief explanation of 29 U.S.C. § 216(b) and the collective action mechanism that arises from it.[2]

The relevant language of section 216(b) is spare:

> An action to recover the liability prescribed in [this subsection] may be maintained against any employer (including a public agency) in any Federal or State court of competent jurisdiction by any one or more employees for and in behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought. . . . The right provided by this subsection to bring an action by or on behalf of any employee, and the right of any employee to become a party plaintiff

---

[2] Section 216(b) also applies to actions under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 623, because the ADEA "incorporates enforcement provisions of the [FLSA]" and "provides that the ADEA shall be enforced using certain of the powers, remedies, and procedures of the FLSA." *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 167 (1989). We here refer to the collective action as an FLSA mechanism because the FLSA is the originating statute, and because in this case only the FLSA is at issue.

to any such action, shall terminate upon the filing of a complaint by the Secretary of Labor . . . .

29 U.S.C. § 216(b).

It is evident from the statute that workers may litigate jointly if they (1) claim a violation of the FLSA, (2) are "similarly situated," and (3) affirmatively opt in to the joint litigation, in writing. *Id.* It is evident also that the "right" to litigate jointly has two permutations: The statute refers to "[t]he right . . . to bring an action by or on behalf of any employee," and to "the right of any employee to become a party plaintiff to any such action," *id.* — that is, the right to bring the collective litigation and the right to join it. But the statute specifies little else. It does not prescribe terms for the resulting proceeding. It does not provide a definition of "similarly situated," on which access to the collective mechanism typically turns. It does not establish a process for evaluating the propriety of a collective proceeding as litigation unfolds — for example, it makes no mention of "certification" or "decertification" of a collective action. And it says nothing about the standard the district court should apply when the collective mechanism is challenged.

Given these gaps, much of collective action practice is a product of interstitial judicial lawmaking or ad hoc district court discretion. In particular, although nothing in section 216(b) expressly compels it, it is now the near-universal practice to evaluate the propriety of the collective mechanism — in particular, plaintiffs' satisfaction of the "similarly situated" requirement — by way of a two-step "certification" process. *See* 1 McLaughlin on Class Actions

§ 2:16 (14th ed. 2017).**[3]**   As this process most often functions, plaintiffs will, at some point around the pleading stage, move for "preliminary certification" of the collective action, contending that they have at least facially satisfied the "similarly situated" requirement. *See* 1 McLaughlin on Class Actions § 2:16. Later, after the necessary discovery is complete, defendants will move for "decertification" of the collective action on the theory that the plaintiffs' status as "similarly situated" was not borne out by the fully developed record. *Id.*

We will address in subsequent sections the propriety of this two-step approach, as well as the proper means of evaluating whether plaintiffs are entitled to litigate in a collective action. As an initial matter, however, it is useful to address certain common misconceptions about the "preliminary certification" and "decertification" of collective actions.

As noted, neither "certification" nor "decertification" appears in text of section 216(b). The terms have instead been adopted from Federal Rule of Civil Procedure 23, which governs class actions in federal court. The underlying assumption of that appropriation seems to be that collective and class actions, which to a degree resemble one another, must be handled in procedurally parallel ways. That assumption is unfounded.

---

**[3]** *See e.g., Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1260 (11th Cir. 2008); *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1105 (10th Cir. 2001); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466–67 (N.D. Cal. 2004) (citing examples).

Collective actions and class actions are creatures of distinct texts — collective actions of section 216(b), and class actions of Rule 23 — that impose distinct requirements. *See* 7B Fed. Prac. & Proc. Civ. § 1807 (citing examples of cases so observing).[4] The "expedient adoption of Rule 23 terminology with no mooring in the statutory text of § 216(b)" risks "inject[ing] a measure of confusion into the wider body of FLSA jurisprudence" — and has likely already done so. *Symczyk v. Genesis HealthCare Corp.*, 656 F.3d 189, 194 (3d Cir. 2011), *rev'd on other grounds*, 569 U.S. 66 (2013).

"Preliminary certification" of an FLSA collective action — also known as "provisional" or "conditional" certification — is an example of the confusion sown by the Rule 23 analogy. The term "certification" calls to mind an affirmative decision by the district court, as in the Rule 23 context, to allow a collective action to go forward. *See* Fed. R. Civ. P. 23(c)(1)(A). Yet, unlike in the Rule 23 context, the district court in a collective action plays no such gatekeeping role. Preliminary certification in the FLSA context does not "produce a class with an independent legal status[] or join additional parties to the action." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013). "The sole consequence" of a successful motion for preliminary certification is "the sending of court-approved written notice" to workers who may wish to join the litigation as individuals. *Id.*

---

[4] *See, e.g., Calderone v. Scott*, 838 F.3d 1101, 1104 (11th Cir. 2016); *O'Brien v. Ed Donnelly Enters., Inc.*, 575 F.3d 567, 584–85 (6th Cir. 2009), *abrogated on other grounds by Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663 (2016); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996); *Lusardi v. Lechner*, 855 F.2d 1062, 1078 (3d Cir. 1988).

Given its purpose, preliminary certification may take place *after* the collective action has already begun. A collective action is instituted when workers join a collective action complaint by filing opt-in forms with the district court. *See id.*; *Rangel v. PLS Check Cashers of Cal.*, ___ F.3d ___, 2018 WL 3892987, at *2 n.1 (9th Cir. 2018); *Smith v. T-Mobile USA Inc.*, 570 F.3d 1119, 1122–23 (9th Cir. 2009); *Sandoz*, 553 F.3d at 919; *Morgan*, 551 F.3d at 1259. Whether opt-in forms are filed after or before preliminary certification is thus entirely up to the workers joining the litigation; preliminary certification is "*neither necessary nor sufficient* for the existence of a [collective] action." *Myers v. Hertz Corp.*, 624 F.3d 537, 555 n.10 (2d Cir. 2010) (emphasis added).

"Decertification" is another appropriation — and another misappropriation — from the Rule 23 context. Again, the term implies that a district court has some threshold role in creating a collective action. But, once more, section 216(b) does not provide for any "certification" process in the ordinary sense. Under section 216(b), workers have a "right" to bring or join a collective action, and may create the collective action of their own accord by filing opt-in forms. *See* 29 U.S.C. § 216(b); *Symczyk*, 569 U.S. at 75. For a collective action to be "decertified," then, means that the plaintiffs cannot proceed collectively on the existing complaint because they are not similarly situated, so the opt-in plaintiffs must be dismissed.

Despite the imprecision, we will adhere to the terms commonly used in collective action practice, as the terms are now widespread. For the reasons we have explained, we do not mean by the use of terms derived for the class action context to imply that there should be any particular

procedural parallels between collective and class actions. *See Symczyk*, 656 F.3d at 194.

We turn now to the facts and procedural history of this case.

## II

Since at least 2000, the Officers have been subject to a written, FLSA-compliant policy prohibiting off-the-clock work. According to this policy, the Officers are required to report all overtime accurately, in six-minute increments, whether or not the overtime was approved in advance by a supervisor. The written policy states that those who fail to comply may be subject to discipline.

This overtime policy was widely known among the Officers. Since at least 2000, the overtime policy has been memorialized in the Officers' collective-bargaining agreements, in letters to the Officers from the Los Angeles Chief of Police, and in the Department manual. No Officer claims ignorance of the official obligation to report overtime accurately.

The Officers contend, however, that the Department follows an unwritten policy that dissuades, and as a practical matter prevents, accurate time reporting. According to the Officers, supervisors routinely require short blocks of extra work — pre-shift work, post-shift work, or work through meal breaks — yet discourage or reject overtime claims in amounts of less than one hour.

The Officers' allegations of an unwritten, Department-wide policy served two purposes. First, it went to the merits of the Officers' FLSA claims. The FLSA requires covered workers to be paid at least 1.5 times their normal rate for all

work in excess of forty hours weekly, 29 U.S.C. § 207(a)(1), provided the employer has actual or constructive knowledge that the work is occurring.  29 C.F.R. § 785.11; *Forrester v. Roth's I.G.A. Foodliner, Inc.*, 646 F.2d 413, 414 (9th Cir. 1981).  Employers who violate this requirement are liable for damages in the amount of the unpaid overtime, "an additional equal amount as liquidated damages," and "reasonable attorney's fee . . . and costs."    29 U.S.C. § 216(b).  An unwritten policy discouraging the reporting of overtime, if proven at trial, would both lend credence to the Officers' claims that they incurred unpaid overtime and help satisfy the element of knowledge.    Second, credible allegations of a Department-wide policy should suffice to make the Officers similarly situated, as required to maintain a collective action.  *See id.*

The first of the two collective actions at issue in this appeal, *Alaniz v. City of Los Angeles*, No. CV 04-8592 AG (AJWx),[5] was filed in 2004.  By the end of 2007, the *Alaniz* collective action had been joined by over 2,200 Officers. The second of the collective actions, *Mata v. City of Los Angeles*, No. CV 07-06782 AG (AJWx), was filed in 2007. By the end of 2009, it had been joined by over 150 Officers.

The parties in *Alaniz* stipulated to preliminary certification of the collective action in mid-2006.    The parties in *Mata* did not so stipulate.  But the two cases were related by the district court shortly after *Mata* was filed, and thereafter proceeded on the same track, with overlapping discovery.  Discovery was extensive, lasted several years,

---

[5] *Alaniz* has since been styled *Johnson v. City of Los Angeles* and *Campbell v. City of Los Angeles*.

and was complete for the purposes of decertification at the time the City filed its decertification motion.**[6]**

The City moved for decertification of both collective actions in January 2014. In opposition, the Officers submitted 232 declarations, each from a different Officer claiming uncompensated overtime. These declarations were largely identical, except for each declarant's identifying information and his or her estimate of the average time spent each day in unscheduled pre-shift, post-shift, and meal-break work. A small number of declarations referred to specific instances of supervisors discouraging or rejecting overtime reports for small increments of time.

The Officers also submitted 50 declarations, each from a different Officer, listing types of uncompensated tasks and stating, generally, that workplace "culture and policy" discouraged accurate time reporting. These declarations — also largely identical, except for each declarant's list of tasks — stated that supervisors were aware of off-the-clock work and knew that the Department benefitted from it, but did not insist that the Officers report it. The declarations also stated that the declarants learned from their first days with the Department that, notwithstanding written rules to the contrary, overtime in amounts of less than one hour was not to be reported.

In support of its motion for decertification, the City submitted an analysis of the overtime that *was* reported. This analysis, uncontroverted by the Officers, revealed roughly 6.6 million overtime reports between 2001 and

---

**[6]** Fact discovery was reopened in October 2013, with a new cutoff of April 2014. No party has suggested that the reopened discovery was relevant to the decertification question.

2014. Of these 6.6 million reports, 330,000 reports were for overtime of less than one hour, and 112,000 were for overtime of less than 30 minutes. Of the reports claiming less than an hour of overtime, 64,000 were filed by plaintiffs in the *Alaniz* and *Mata* actions.

The City also submitted uncontroverted evidence demonstrating the Officers' dissimilarity in tasks and in geographic assignments. According to the declaration submitted by the Department's FLSA compliance manager, the Officers worked at seven different ranks and within each of the Department's 31 divisions. The Officers had at least hundreds of different supervisors among them.

To determine whether, in light of this evidence, the Officers were "similarly situated" within the meaning of the FLSA, the district court applied a three-prong test widely used in district courts both within this circuit and without, although it has not been endorsed by this court:

> First, the district court considered the "factual and employment setting" of the Officers. According to the district court, the "boilerplate" nature of the Officers' declarations called into question their evidentiary value, whereas the City's uncontroverted evidence reflected widespread compliance with the overtime reporting policy, even for fairly short periods of overtime. As a result, the officers could not have been subject to a uniform policy preventing the reporting of overtime period of less than one hour. In the absence of such a policy, the district court concluded, the Officers' claims were necessarily tied to discrete worksites and supervisors, and

unsuited to a collective of the scale the Officers sought.

Second, the district court considered the defenses available to the City.  The district court found many of these defenses — lack of actual or constructive knowledge, good faith, the de minimis nature of the alleged overtime violations — situation-specific, and thus difficult to address on a collective basis.

Finally, the district court considered "fairness and procedural considerations," and concluded that there was no benefit to the court or to the parties in attempting to litigate collectively.

As all three factors weighed in favor of decertification, the district court granted the City's motion and dismissed the Officers without prejudice.  Shortly thereafter, the original plaintiffs, who had been left behind after decertification, settled their individual FLSA claims with the City.  The district court entered judgment, and the present appeals followed.

## III

Whether opt-in plaintiffs can appeal a decertification order is a question of first impression in this circuit.  The City raises several objections to appellate jurisdiction and to the Officers' standing to appeal — that the opt-in plaintiffs are not "parties," that the decertification was interlocutory, and that the dismissal was without prejudice.  None has merit.

## A

The FLSA leaves no doubt that "every plaintiff who opts in to a collective action has party status." *Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) (quoting Wright & Miller, 7B Fed. Prac. & Proc. Civ. § 1807 (3d ed. 2018)). Under the FLSA, an opt-in plaintiff's action is deemed "commenced" from the date her opt-in form is filed with the district court. 29 U.S.C. § 256. From that point on, there is no statutory distinction between the roles or nomenclature assigned to the original and opt-in plaintiffs. *See Mickles v. Country Club Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018). The FLSA does not use the terms "original" or "opt-in" plaintiff at all; the FLSA instead refers to *all* plaintiffs in a collective action as "party plaintiff[s]." 29 U.S.C. § 256(a).[7]    Where necessary to distinguish

---

[7] The section reads, in full:

> In determining when an action is commenced for the purposes of section 255 of this title, an action commenced on or after May 14, 1947 under the Fair Labor Standards Act of 1938, as amended, the Walsh-Healey Act, or the Bacon-Davis Act, shall be considered to be commenced on the date when the complaint is filed; except that in the case of a collective or class action instituted under the Fair Labor Standards Act of 1938, as amended, or the Bacon-Davis Act, it shall be considered to be commenced in the case of any individual claimant —

> (a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

between the party plaintiffs who brought the suit and those who joined after its filing, the FLSA speaks only of the party plaintiffs "specifically named . . . in the complaint" and those "not so" named.[8] 29 U.S.C. § 256(a)–(b). The natural parallel is to plaintiffs initially named or later added under the ordinary rules of party joinder. *See* Fed. R. Civ. P. 20(a)(1).

The contrast with class action practice is instructive. Rule 23 allows for representative actions in which class members' interests are litigated by the named plaintiff. In part because of the due process concerns inherent such a proceeding, the district court must initially approve the creation of a class and the appointment of an adequate representative. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 811–12 (1985); *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1024 (9th Cir. 1998); *Blackie v. Barrack*, 524 F.2d 891, 910 (9th Cir. 1975). Proceeding as a class action is thus conditioned on the court's approval and results in a less active role in the litigation for members of the class than if litigating individually.

A collective action, on the other hand, is not a comparable form of representative action. Just the opposite: Congress added the FLSA's opt-in requirement with the

---

(b) if such written consent was not so filed or if his name did not so appear--on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256.

[8] As shorthand, we refer to the party plaintiffs originally named in the complaint as the "original plaintiffs," and the party plaintiffs who join as the "opt-in plaintiffs."

express purpose of "bann[ing]" such actions under the FLSA.  Portal-to-Portal Act of 1947, Pub. L. No. 80-49, § 5(a), 61 Stat. 84, 87; *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 173 (1989).  A collective action is more accurately described as a kind of mass action, in which aggrieved workers act as a collective of *individual* plaintiffs with *individual* cases — capitalizing on efficiencies of scale, but without necessarily permitting a specific, named representative to control the litigation, except as the workers may separately so agree.  *See Abraham v. St. Croix Renaissance Grp., L.L.L.P.*, 719 F.3d 270, 272 n.1 (3d Cir. 2013).  The opt-in plaintiffs thus choose whether and when to "become parties to a collective action only by filing a written consent with the court."  *Symczyk*, 569 U.S. at 75; *see also Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977), *abrogated on other grounds by Hoffmann-La Roche*, 493 U.S. 165.  And the result of joining the collective is "the same status in relation to the claims of the lawsuit as [that held by] the [original] named plaintiffs." *Prickett v. DeKalb County*, 349 F.3d 1294, 1297 (11th Cir. 2003) (per curiam).

Given this structure, the dismissal of the opt-in plaintiffs before the entry of final judgment — "decertification" — has no impact on their party status for purposes of appeal.  Party status does not depend on being present in the district court litigation from the moment it began or at the moment it ended.  All "those that properly become parties[] may appeal an adverse judgment."  *Marino v. Ortiz*, 484 U.S. 301, 304 (1988); *Mickles*, 887 F.3d at 1278.

Nor, contrary to the City's position, did their dismissal as opt-in plaintiffs before the entry of judgment prevent the Officers in this case from being "bound" by the judgment and thus eligible to challenge it on appeal.  A decertification

order disposes only of the right to proceed collectively as the collective was defined in the complaint; it leaves the original plaintiff to continue litigating. Such an order is therefore interlocutory, *see Ray Haluch Gravel Co. v. Cent. Pension Fund of Int'l Union of Operating Eng'rs & Participating Emp'rs*, 571 U.S. 177, 183 (2014), and, like interlocutory orders generally, merges with final judgment. *Hook v. Ariz. Dep't of Corr.*, 107 F.3d 1397, 1401 (9th Cir. 1997); *see also Mickles*, 887 F.3d at 1278–79.

The City argues that opt-in plaintiffs, even if competent to appeal from a final judgment generally, cannot appeal an order dismissing them without prejudice. It is unclear whether the City intends this argument as a challenge to the finality of the order appealed from as a basis for this court's appellate jurisdiction, or to the Officers' appellate standing. In either case, the City is mistaken.

As to appellate jurisdiction, the City confuses finality, which is a condition of appealability under 28 U.S.C. § 1291, with an adverse disposition on the merits, which is not. "That [a] dismissal is without prejudice and the litigation may be renewed [in a new action] does not affect . . . appealability . . . ." *Thompson v. Potashnick Constr. Co.*, 812 F.2d 574, 576 (9th Cir. 1987). The touchstone for finality is that the particular action filed is fully disposed of, without the possibility of being resurrected through amendment. *See, e.g.*, *Griffin v. Arpaio*, 557 F.3d 1117, 1119 (9th Cir. 2009); *Montes v. United States*, 37 F.3d 1347, 1350 (9th Cir. 1994). Applying these standards, whether a dismissed party to the action could litigate the same merits issue by filing a different case does not matter. The judgment entered here plainly qualifies as final and so appealable.

As to appellate standing, the Officers were, as noted, parties to the action at the time they opted in, and parties to the action at the time they were dismissed.  Although the dismissal was without prejudice to the merits of the Officers' individual FLSA claims, it removed them from the action they chose to join and disposed of their statutory right to proceed in a collective as that collective was defined in the complaint.  *See* 29 U.S.C. § 216(b).  The City, citing *McElmurry v. U.S. Bank National Ass'n*, 495 F.3d 1136, 1138–39 (9th Cir. 2007), contends no such right exists, but it does not attempt to square this assertion with the plain language of the FLSA, which twice uses the term "right." We did not hold in *McElmurry* that the FLSA provides no "right" to a collective action.  We held only that the risk of losing that right because of a limitations problem did not justify applying the collateral-order doctrine to ensure immediate review of a denial of preliminary certification. *Id.* at 1139–41.

In short, the dismissal of the Officers removed them from the litigation, an ouster they maintain violated their right under the FLSA to pursue their claims collectively.  The dismissal order then merged into the final judgment. Nothing more is needed for appellate jurisdiction or for standing.  *See, e.g.*, *Ramirez v. Fox Television, Inc.*, 998 F.2d 743, 747 (9th Cir. 1993) (noting that any "order which effectively sends a party out of court is appealable" (quoting *United States v. Lee*, 786 F.2d 951, 956 (9th Cir. 1986))); *Norwest Bank Minn., N.A. v. Sween Corp.*, 118 F.3d 1255, 1257 n.1 (8th Cir. 1997) (noting that a party dismissed before a ruling on the merits may appeal the dismissal to which it was a party, but not the merits ruling to which it was not).

## B

We recognize that the Third Circuit recently confronted similar issues in *Halle v. West Penn Allegheny Health System*, 842 F.3d 215 (3d Cir. 2016), and reached a somewhat different conclusion.

In *Halle*, an opt-in plaintiff, after being dismissed from a collective action, refiled his FLSA claims as the original plaintiff of a new collective action. *Id.* at 221–22. Other opt-in plaintiffs dismissed from the first iteration of the case then promptly joined, and the defendant moved for decertification. *Id.* The district court granted the decertification motion on preclusion grounds, treating the decertification order from the first case as collaterally estopping a collective action in the second. *Id.* at 222. The original plaintiff in the second suit then settled, and a group of opt-in plaintiffs — now twice-dismissed — appealed. *Id.*

The Third Circuit concluded, as have we, that "[a]ppellate review of th[e] interlocutory decertification decision [was] available by proceeding to a final judgment on the merits of [the original plaintiff's] individual claims." *Id.* at 228. The Third Circuit then determined, however, that only the original plaintiff had the authority to seek appellate review. According to the Third Circuit, dismissal of the opt-in plaintiffs deprived them of party status, and thus deprived them of the ability to appeal their dismissal after final judgment. *Id.* at 229.

In so holding, the Third Circuit contrasted the opt-in plaintiffs' position with that of Rule 23 class members appealing from approval of a class settlement. *Id.* Whereas class members who do not opt out are parties to the settlement and bound by it, opt-in plaintiffs dismissed from an FLSA collective action are not parties to the original

plaintiff's post-decertification settlement of her individual claims. *Id.* According to the Third Circuit, the opt-in plaintiffs were therefore "not subject to a final decision disposing of their rights from which they may file an appeal under § 1291." *Id.*

We disagree. The Third Circuit's approach rests on a flawed understanding of the scope of a final judgment. A final judgment is not limited to orders disposing of claims on their merits, nor is it limited to orders affecting the plaintiffs originally named in the complaint or still remaining at the time the case is fully resolved. Opt-in plaintiffs become parties to an FLSA action upon opting into it. 29 U.S.C. § 216(b). They are therefore parties to the order decertifying the collective action and dismissing them from the suit — which is of course the only reason the district court in *Halle* was able to dismiss the opt-in plaintiffs from the second collective action on issue-preclusion grounds. As *Halle* acknowledged, a decertification order is interlocutory. *Halle*, 842 F.3d at 226–27. It therefore merges with final judgment, such that the parties affected by it may appeal at that time. *See id.* at 228.

In the context of a voluntary dismissal — the path to settlement in the present cases — appeal is permitted from "a voluntary dismissal which imposes a condition that creates sufficient prejudice in a legal sense." *Coursen v. A.H. Robins Co.*, 764 F.2d 1329, 1342 (9th Cir. 1985)), *opinion corrected*, 773 F.2d 1049; *see also Concha v. London*, 62 F.3d 1493, 1507 (9th Cir. 1995). Where the original plaintiff's voluntary dismissal results in a final judgment disposing of *other, non-settling plaintiffs'* statutory right to proceed collectively, that standard is met. *See also Espenscheid v. DirectSat USA, LLC*, 688 F.3d 872, 877–78 (7th Cir. 2012) (concluding that the *original* plaintiff

in a collective action may appeal a decertification order after voluntarily dismissing his FLSA claims).  So, although choosing to settle claims may prevent the settling plaintiff from appealing, for the non-settling plaintiffs, it is immaterial that the settling plaintiff cannot be a party to the appeal.  Particularly if, as the Third Circuit assumed, the decertification order is issue-preclusive as to the availability of a collective action against all plaintiffs dismissed as a result of it, it cannot be that only the original plaintiff is competent to appeal.

We are not the first circuit to reject the appealability reasoning in *Halle*.  Although it did not describe itself as creating a split in authority, the Eleventh Circuit in *Mickles* concluded that opt-in plaintiffs could appeal a denial of preliminary certification after the entry of final judgment. *Mickles*, 887 F.3d at 1278–79.  It so concluded because, even though the opt-in plaintiffs were "not bound by the final order approving settlement" between the original plaintiff and the employer, they were bound by the final judgment into which earlier interlocutory orders merged.  *Id.* at 1279. *Mickles* dealt with a different interlocutory order than we do — a denial of preliminary certification, rather than a grant of decertification — but its reasoning tracks our own, and is equally inconsistent with that in *Halle*.

## C

The City argues, in the alternative, that the terms of the Officers' opt-in forms prevent them from appealing, because the forms entrusted all "certification" questions to the original plaintiff.  Again, the City relies heavily on *Halle*, which adopted the City's view based on the opt-in language at issue in that case.

First, nothing inherent in the opt-in process requires waiving the right or delegating the responsibility to appeal a decertification order. The spare language of the FLSA regarding the opt-in form refers only to a "consent in writing to become . . . a party." 29 U.S.C. § 216(b). Accordingly, if the members of a collective reach their own agreement to delegate litigation duties, such an agreement marks a deviation from the statute's default assumption of coequal status.

Second, nothing about the opt-in forms in this case — which differ substantially from those in *Halle* — suggests that the Officers delegated their authority to appeal an order ousting them from the case. The consent forms here at issue state only, "I . . . authorize the filing and prosecution of the action in my name." The district court's decertification order in essence negated that consent, by dismissing the opt-in plaintiffs from the suit; no longer could the action be prosecuted in their names. So, to the extent there was a delegation here, it was not a delegation that survived the decertification.

## IV

As there is no obstacle to appellate review in this case, we turn to the district court's decertification order. The Officers challenge the order both on its interpretation of the FLSA and on its application of the FLSA to the record.

## A

Beginning with the district court's interpretation of the FLSA, we note that neither the FLSA nor the case law of this circuit offers much express guidance on collective action practice. As previously discussed, it is clear from the language of section 216(b) that (1) workers may join a

collective action if they claim a violation of the FLSA, are "similarly situated" to the original plaintiff, and affirmatively opt in; and (2) participation in the collective action is a statutory "right" held equally and individually by each party plaintiff, whether originally appearing in the complaint or later opting in.  29 U.S.C. § 216(b).

However, the FLSA leaves the collective action procedures — beyond the requirement of a written opt-in — open.  As here relevant, the FLSA does not establish a process for evaluating the propriety of the collective mechanism as litigation proceeds.  It does not provide a definition of "similarly situated" — the requirement that largely determines the viability of a collective action.  And it says nothing about the standard the district court should apply when the collective mechanism is challenged.

We address each question in turn.

## 1

In the absence of statutory or case law guidance, the district courts, both within this circuit and without, have arrived at a loose consensus as to the proper procedure for determining whether the collective mechanism is appropriate.  *See* 1 McLaughlin on Class Actions § 2:16 (14th ed. 2017); *see also Leuthold*, 224 F.R.D. at 466–67 (citing examples).

First, at or around the pleading stage, plaintiffs will typically move for preliminary certification.  1 McLaughlin on Class Actions § 2:16; 7B Fed. Prac. & Proc. Civ. § 1807.  Preliminary certification, as noted, refers to the dissemination of notice to putative collective members, conditioned on a preliminary determination that the collective as defined in the complaint satisfies the "similarly

situated" requirement of section 216(b). *Symczyk*, 569 U.S. at 75. At this early stage of the litigation, the district court's analysis is typically focused on a review of the pleadings but may sometimes be supplemented by declarations or limited other evidence. *See, e.g.*, *Sheffield v. Orius Corp.*, 211 F.R.D. 411, 413 (D. Or. 2002). The level of consideration is "lenient," *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 729 F.3d 239, 243 (3d Cir. 2013); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 953 (11th Cir. 2007) — sometimes articulated as requiring "substantial allegations," sometimes as turning on a "reasonable basis," but in any event loosely akin to a plausibility standard, commensurate with the stage of the proceedings. *See, e.g.*, *Halle*, 842 F.3d at 224; *Morgan*, 551 F.3d at 1260 n.38; *Thiessen*, 267 F.3d at 1105; *Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1214 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *cf.* Fed. R. Civ. P. 12(b)(6); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

A grant of preliminary certification results in the dissemination of a court-approved notice to the putative collective action members, advising them that they must affirmatively opt in to participate in the litigation. 1 McLaughlin on Class Actions § 2:16; 7B Fed. Prac. & Proc. Civ. § 1807; *see also Hoffmann-La Roche*, 493 U.S. at 170–71. A denial of preliminary certification precludes dissemination of any such notice. Denial of preliminary certification may be without prejudice and may be revisited by the district court after further discovery. *Halle*, 842 F.3d at 225; *see, e.g.*, *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 894 (D. Md. 1995). Or it may be with prejudice, in which case, if premised on the party plaintiffs' failure to satisfy the "similarly situated" requirement of section 216(b), it functions as an unfavorable adjudication of the right to proceed in a collective. *Mickles*, 887 F.3d at 1280;

*see also Sandoz*, 553 F.3d at 915 n.2.  In such cases, if opt-in plaintiffs have already joined, they will be dismissed without prejudice to the merits of their individual FLSA claims, and the original plaintiff will be left to litigate alone. *Mickles*, 887 F.3d at 1280 (citing examples).

Assuming the collective action has survived its earlier scrutiny, the second stage will come at or after the close of relevant discovery.  *See Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1218 (11th Cir. 2001) (per curiam).  The employer can move for "decertification" of the collective action for failure to satisfy the "similarly situated" requirement in light of the evidence produced to that point. 1 McLaughlin on Class Actions § 2:16; 7B Fed. Prac. & Proc. Civ. § 1807.  The district court will then take a more exacting look at the plaintiffs' allegations and the record. *Anderson*, 488 F.3d at 953; *Thiessen*, 267 F.3d at 1102–03. Because of its purpose and timing, decertification can resemble a motion for partial summary judgment on the "similarly situated" question, and may be combined with cross-motions for summary judgment.  *See, e.g.*, *Sargent v. HG Staffing, LLC*, 171 F. Supp. 3d 1063, 1070 (D. Nev. 2016).

If the motion for decertification is granted, the result is a negative adjudication of the party plaintiffs' right to proceed in a collective as that collective was defined in the complaint.  The opt-in plaintiffs are dismissed without prejudice to the merits of their individual claims, and the original plaintiff is left to proceed alone.  *Hipp*, 252 F.3d at 1218.  If the motion for decertification is denied, the collective proceeds toward trial, at least on the questions justifying collective treatment.  *Id.*

In determining, as a matter of first impression in this circuit, how to evaluate a motion for decertification, we first

must confirm that the district court was correct in considering decertification at the point it did, and on the record then available. We conclude that it was.

The two-step approach has been endorsed by every circuit that has considered it.[9] *See Myers*, 624 F.3d at 554–55 (2d Cir.); *Camesi*, 729 F.3d at 243 (3d Cir.); *White*, 699 F.3d at 877 (6th Cir.); *Thiessen*, 267 F.3d at 1105 (10th Cir.); *Morgan*, 551 F.3d at 1260 (11th Cir.). There is good reason for this consensus. In the absence of any statutory directive, the proper means of managing a collective action — the form and timing of notice, the timing of motions, the extent of discovery before decertification is addressed — is largely a question of "case management," *Hoffmann-La Roche*, 493 U.S. at 174, and thus a subject of substantial judicial discretion. *See GCB Commc'ns, Inc. v. U.S. S. Commc'ns, Inc.*, 650 F.3d 1257, 1262 (9th Cir. 2011); *see also, e.g.*, *Myers*, 624 F.3d at 555 n.10; *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). There are of course limits to that discretion. In some cases, it may be that a district court abuses its discretion in refusing to allow notice to putative collective action members, or in decertifying too early or too late. *See, e.g.*, *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 580 (7th Cir. 1982) (observing that, in a valid collection action, "forbid[ding] the sending of notice altogether" would be an abuse of discretion). But as a general rule, the two-step process, culminating in a decertification motion on or after the close of relevant discovery, has the advantage of ensuring early notice of plausible collective actions, then eliminating those whose promise is not borne out by the record.

---

[9] Neither the City nor the Officers have objected to the use of the two-step process.

The present case fits this mold well.  Notice was provided to putative collective action members upon preliminary certification.  Discovery was extensive, and the relevant record was complete at the time of the district court's ruling on the decertification motion.  The district court did not abuse its discretion in considering the validity of the collective mechanism as it did, by way of the City's post-discovery motion for decertification.[10]

**2**

We turn next to the meaning of the statutory term "similarly situated."  As the question is one of statutory construction, we proceed de novo. *In re Mitchell*, 977 F.2d 1318, 1320 (9th Cir. 1992).

There is no established definition of the FLSA's "similarly situated" requirement, nor is there an established test for enforcing it. *See Thiessen*, 267 F.3d at 1102.  This absence of authority is surprising, as being "similarly situated" is the key condition for proceeding in a collective, and thus the issue on which a grant or denial of decertification generally depends.  Nonetheless, broadly speaking, two approaches to the "similarly situated" requirement have emerged. *See Mooney*, 54 F.3d at 1214.

---

[10] The district court did, however, overstate the extent of its discretionary authority.  The district court took the view that it had the same discretion in considering a motion for decertification as it had on preliminary certification.  It did not.  Preliminary certification, to the extent it relates to the approval and dissemination of notice, is an area of substantial district court discretion.  Post-discovery decertification is not an inquiry into the propriety of notice, and so operates under a different standard. *See infra* Part IV.A.3.

### a. The minority approach

The minority approach is to treat a collective as an opt-in analogue to a Rule 23(b)(3) class. *See Mooney*, 54 F.3d at 1214; *see also, e.g.*, *Shushan v. Univ. of Colo. at Boulder*, 132 F.R.D. 263, 265 (D. Colo. 1990). District courts following the minority approach tend to expect a collective to satisfy the requirements of numerosity, commonality, typicality, adequacy, predominance, and superiority. Fed. R. Civ. P. 23(b)(3); *see Thiessen*, 267 F.3d at 1103.[11]

No circuit court has adopted the minority approach in toto. *See* 7B Fed. Prac. & Proc. Civ. § 1807 (collecting examples). The Seventh Circuit has imported the "predominance" requirement of Rule 23(b)(3) into section 216(b). *Alvarez v. City of Chicago*, 605 F.3d 445, 449 (7th Cir. 2010). It is unclear whether it would similarly import the other requirements of Rule 23. In *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770 (7th Cir. 2013), the Seventh Circuit did suggest that the section 216(b) and Rule 23 standards are already "largely merged . . . , though with some terminological differences." *Id.* at 772. But *Espenscheid*'s depiction of section 216(b) reflects the Seventh Circuit's desire for "[s]implification" more than the text of the FLSA. *Id.*

All other circuits to have considered the issue — including the Tenth Circuit, which *Espenscheid* inaccurately

---

[11] The Supreme Court recently declined an opportunity to delve into this issue. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) ("The parties do not dispute that the standard for certifying a collective action under the FLSA is no more stringent than the standard for certifying a class under the Federal Rules of Civil Procedure. This opinion assumes, without deciding, that this is correct.").

cites as supportive, *see Thiessen*, 267 F.3d at 1105 — have rejected the analogy to Rule 23. *See, e.g.*, *Monroe v. FTS USA, LLC*, 860 F.3d 389, 405–06 (6th Cir. 2017), *cert. denied*, 138 S. Ct. 980 (2018); *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996). We agree with the consensus view that the minority approach rests improperly on an analogy to Rule 23 lacking in support in either the FLSA or the Federal Rules of Civil Procedure.[12]

First, in language and structure, section 216(b) and Rule 23 bear little resemblance to one another.[13] The limited

---

[12] We reached this conclusion once before, in *Kinney Shoe v. Vorhes*, 564 F.2d 859 (9th Cir. 1977), *abrogated on other grounds by Hoffmann-La Roche*, 493 U.S. 165, in which we noted that "[t]he clear weight of authority holds that Rule 23 procedures are inapplicable for the prosecution of [collective] actions under [section] 216(b)." *Id.* at 862. However, we were not concerned in *Kinney Shoe* with the requirements for proceeding in a class or collective action, and our reasoning in that case rested in part on the later-rejected notion that class and collective actions are not just distinct, but "mutually exclusive." *Cf. Busk v. Integrity Staffing Solutions, Inc.*, 713 F.3d 525, 530 (9th Cir. 2013) (holding that a collective action and an opt-out class can proceed in tandem), *rev'd on other grounds*, 135 S. Ct. 513 (2014); *Calderone*, 838 F.3d at 1104 ("An FLSA collective action and a Rule 23(b)(3) class action may be fundamentally different creatures, but they are not 'irreconcilable' . . . ."). We therefore address the present question afresh.

[13] Rule 23 provides, in relevant part, as follows:

(a) Prerequisites. One or more members of a class may sue or be sued as representative parties on behalf of all members only if:

(1) the class is so numerous that joinder of all members is impracticable;

statutory requirements of a collective action are "independent of, and unrelated to, the requirements for class action under Rule 23," *Grayson*, 79 F.3d at 1096 n.12, and, by omitting most of the requirements in Rule 23 for class certification, necessarily impose a lesser burden, *see Calderone*, 838 F.3d at 1104. *See also LaChapelle v. Owens-Ill., Inc.*, 513 F.2d 286, 289 (5th Cir. 1975). For example, section 216(b) does not mention predominance or superiority. *Monroe*, 860 F.3d at 397. And as nonrepresentative actions, collective actions have no place for conditions such as adequacy or typicality. This gap between the requirements of collective and class proceedings is to be expected, as many of the rules specific to class actions have evolved to protect the due process rights of absent class members, a consideration not pertinent under the post-1947 FLSA. *See* Portal-to-Portal Act, § 5(a); *McElmurry*, 495 F.3d at 1139; *Espenscheid*, 705 F.3d at 772.

---

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

(b) Types of Class Actions. A class action may be maintained if Rule 23(a) is satisfied and if: . . .

(3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

Second, as other circuits have noted, the FLSA not only imposes a lower bar than Rule 23, it imposes a bar lower in some sense even than Rules 20 and 42, which set forth the relatively loose requirements for permissive joinder and consolidation at trial. Fed. R. Civ. P. 20(a)[14]; Fed. R. Civ. P. 42[15]; *O'Brien*, 575 F.3d at 584–85; *Grayson*, 79 F.3d at 1096; *Lusardi*, 855 F.2d at 1078. Whereas Rules 20 and 42 allow district courts discretion in granting joinder or consolidation, *In re EMC Corp.*, 677 F.3d 1351, 1360 (9th Cir. 2012), the FLSA, which declares a right to proceed

---

[14] Rule 20(a) establishes the process for permissive joinder of parties:

> Persons Who May Join or Be Joined.
>
> (1) Plaintiffs.   Persons may join in one action as plaintiffs if:
>
> (A) they assert any right to relief jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
>
> (B) any question of law or fact common to all plaintiffs will arise in the action.

[15] Rule 42 establishes the process for consolidation:

> (a) Consolidation.   If actions before the court involve a common question of law or fact, the court may:
>
> (1) join for hearing or trial any or all matters at issue in the actions;
>
> (2) consolidate the actions; or
>
> (3) issue any other orders to avoid unnecessary cost or delay.

collectively on satisfaction of certain conditions, does not. *See* 29 U.S.C. § 216(b); *Grayson*, 79 F.3d at 1096–97. Furthermore, Rule 20 requires, in addition to a common question of law or fact, that the plaintiffs assert a right to relief arising from "the same transaction[] [or] occurrence," Fed. R. Civ. P. 20(a)(1)(A), a condition with no parallel in the FLSA. *See Hipp*, 252 F.3d at 1219.

Third, unlike Rule 23, the collective action mechanism is, in effect, tailored specifically to vindicating federal labor rights. The FLSA is a remedial statute with broad worker-protective aims. *See Hoffmann-La Roche*, 493 U.S. at 173; *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687 (1946); *Monroe*, 860 F.3d at 396, 402–03, 405–06. The collective action mechanism is a means of serving these aims. *See Hoffmann-La Roche*, 493 U.S. at 173; *Monroe*, 860 F.3d at 396–97; *O'Brien*, 575 F.3d at 586. Rule 23, by contrast, is neither a creation of statute nor a provision of specific applicability to certain substantive rights or remedial schemes.

Lastly, as section 216(b) makes no mention of "class" proceedings, one can surmise that the distinction between collective and class proceedings reflects an affirmative congressional choice "not to have the Rule 23 standards apply to [collective] actions." *Thiessen*, 267 F.3d at 1105. That choice was made clear upon introduction of the opt-in provision in 1947, which Congress accomplished without importing class-action requirements or terminology into the FLSA.[16] *See Calderone*, 838 F.3d at 1105; *O'Brien*, 575 F.3d at 584. And it was recognized and reinforced by the Advisory Committee on Rules in 1966, when Rule 23

---

[16] The first version of Rule 23 took effect in 1938. *See Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 363 (3d Cir. 2015).

was amended with the caveat that "present provisions of 29 U.S.C. § 216(b) are not intended to be affected."  Fed. R. Civ. P. 23 advisory committee notes to 1966 amendment; *see also Calderone*, 838 F.3d at 1106; *Knepper v. Rite Aid Corp.*, 675 F.3d 249, 257 (3d Cir. 2012).

For all these reasons, mimicking the Rule 23 standards in evaluating section 216(b) collective actions is not appropriate.

### b.  *The majority approach*

The majority approach to the "similarly situated" requirement — the approach followed by the district court in this case, and by far the more common option[17] — is a flexible inquiry into the factual differences between the party plaintiffs and the desirability of collective treatment.  *See Morgan*, 551 F.3d at 1260 n.38.  Under this approach, often called — not very helpfully — the "ad hoc" test, the district court applies a three-prong test that focuses on points of potential factual or legal *dissimilarity* between party plaintiffs.  First, the district court considers the "disparate

---

[17] *See, e.g.*, *Sargent*, 171 F. Supp. 3d at 1079 (D. Nev.); *Pelayo v. Platinum Limousine Servs., Inc.*, No. CV 15-00023 DKW-BMK, 2015 WL 9581801, at *5 (D. Haw. Dec. 30, 2015); *Scott v. Sawmill*, No. 6:14-CV-01337-MC, 2015 WL 2095294, at *2 (D. Or. May 4, 2015); *Peterson v. Alaska Commc'ns Sys. Grp., Inc.*, No. 3:12-CV-00090-TMB, 2014 WL 12696527, at *3 (D. Alaska Dec. 17, 2014); *Stiller v. Costco Wholesale Corp.*, 298 F.R.D. 611, 631 (S.D. Cal. 2014); *Villarreal v. Caremark LLC*, 66 F. Supp. 3d 1184, 1190 (D. Ariz. 2014); *Espinoza v. County of Fresno*, 290 F.R.D. 494, 501 (E.D. Cal. 2013); *Khadera v. ABM Indus. Inc.*, No. C08-417RSM, 2011 WL 3651031, at *1 (W.D. Wash. Aug. 18, 2011); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, 772 F. Supp. 2d 1111, 1118 (N.D. Cal. 2011); *Reed v. County of Orange*, 266 F.R.D. 446, 449 (C.D. Cal. 2010).

factual and employment settings of the individual plaintiffs."
*Thiessen*, 267 F.3d at 1103.    Second, the district court
considers "the various defenses available to defendants
which appear to be individual to each plaintiff."  *Id.*    Third,
the district court considers "fairness and procedural
considerations."[18]  *Id.*

The ad hoc test is the only one that has been fully
endorsed at the circuit level.  *See Morgan*, 551 F.3d at 1260
n.38 (collecting examples).    And that test *is* a significant
improvement over the Rule 23 analogy.    In omitting
conditions with no grounding in the FLSA, the ad hoc test
better accommodates the party plaintiffs' broad right to
proceed collectively.  *O'Brien*, 575 F.3d at 585.  But the ad
hoc test has two major flaws.

First, although the ad hoc test is properly aimed at
gauging whether party plaintiffs are legally or factually
"similarly situated," it does so at such a high level of
abstraction that it risks losing sight of the statute underlying
it.  As it stands, the ad hoc test offers no clue as to what *kinds*
of "similarity" matter under the FLSA.    It is, in effect, a
balancing test with no fulcrum.

The Third Circuit, for example, has offered a list of
potentially salient considerations in ADEA cases —
"whether the plaintiffs are employed in the same corporate
department, division and location; [whether they] advanced

---

[18] Other, similar sets of factors are sometimes listed, although less
often.    *See, e.g.*, *Rodolico v. Unisys Corp.*, 199 F.R.D. 468, 482
(E.D.N.Y. 2001) (considering "(1) the alleged activities of the defendant;
(2) the similarities among the members of the proposed collective action;
and (3) the extent to which members of the proposed action will rely on
common evidence to prove the alleged discrimination").

similar claims of age discrimination . . . [;] [whether they] had similar salaries and circumstances of employment" — but notes that none is necessarily dispositive in a given case, or even necessary to consider in every instance.[19]  *See Ruehl v. Viacom, Inc.*, 500 F.3d 375, 388 n.17 (3d Cir. 2007).  The key question, then, is one the ad hoc test does not answer: what it means to be "similarly situated" specifically for the purposes of section 216(b).

The abstractness of the ad hoc standard reflects the circuits' focus on providing "tests" for applying the "similarly situated" standard rather than beginning with the term's meaning.  *See Mooney*, 54 F.3d at 1213.  In doing so, the ad hoc approach tends to "explain[] what the term ['similarly situated'] does not mean — not what it does." *Morgan*, 551 F.3d at 1260 & n.38; *see also Mooney*, 54 F.3d at 1213.

The natural answer to the proper inquiry — what "similarly situated" means — is, in light of the collective action's reason for being within the FLSA, that party plaintiffs must be alike with regard to some *material* aspect of their litigation.  That is, the FLSA requires similarity of the kind that "allows . . . plaintiffs the advantage of lower individual costs to vindicate rights by the pooling of resources."  *Hoffmann-La Roche*, 493 U.S. at 170; *see also Halle*, 842 F.3d at 223–24.  That goal is only achieved —

---

[19] The ad hoc test did not originate as an interpretation of the "similarly situated" requirement in section 216(b); it originated as an application of section 216(b) to a particular situation.  *See Lusardi v. Xerox Corp.*, 118 F.R.D. 351, 364–72 (D.N.J. 1987).  In summarizing its reasons for decertifying the collective, which were specific to the record in that ADEA case, the district court in *Lusardi* listed three factors, which later courts adopted wholesale as the definitive test of the statute's meaning.

and, therefore, a collective can only be maintained — to the extent party plaintiffs are alike in ways that matter to the disposition of their FLSA claims. *See Hall*, 842 F.3d at 226. If the party plaintiffs' factual or legal similarities *are* material to the resolution of their case, dissimilarities in other respects should not defeat collective treatment. *Cf. Aragon v. Republic Silver State Disposal, Inc.*, 292 F.3d 654, 659–60 (9th Cir. 2002) (applying Title VII's "similarly situated" standard, and looking for evidence of similarities material to the plaintiff's specific allegation of discrimination).

In considering the "similarly situated" requirement in this case, both the City and the Officers rely heavily on the Supreme Court's assessment, in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), of the commonality requirement of Rule 23.[20]   The analogy is not entirely misplaced.   The "common question" requirement within Rule 23, like the similarly phrased requirements within Rules 20 and 42, bears a close resemblance to the "similarly situated" requirement of section 216(b). *See* Fed. R. Civ. P. 23(a)(2); *see also* Fed. R. Civ. P. 20(a)(1)(B); Fed. R. Civ. P. 42(a).   All these requirements serve comparable ends; their purpose is not simply to identify shared issues of law or fact *of some kind*, but to identify those shared issues that will collectively advance the prosecution of multiple claims in a joint proceeding.   As the Supreme Court stated in *Dukes*, "[w]hat matters . . . is not the raising of common 'questions' — even in droves — but, rather the capacity of a classwide proceeding to generate common answers apt to drive the

---

[20] Rule 23 provides, in relevant part, that "members of a class may sue or be sued as representative parties on behalf of all members only if . . . there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a).

resolution of the litigation." *Dukes*, 564 U.S. at 350 (emphasis omitted) (quoting Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). Similarly, in the collective action context, what matters is not just *any* similarity between party plaintiffs, but a legal or factual similarity material to the resolution of the party plaintiffs' claims, in the sense of having the potential to advance these claims, collectively, to some resolution. *See Calderone*, 838 F.3d at 1103; *Symczyk*, 656 F.3d at 199–200.

However, for the reasons discussed above, broad reliance on *Dukes* and other class action case law remains unwise in the collective action context, as it risks importing into the FLSA, contrary to its terms, the "rigorous analysis" uniquely applied under Rule 23 to purely representative litigation, *Dukes*, 564 U.S. at 350–51, as well as factors — for example, adequacy, superiority, predominance — with no foundation in the language of section 216(b). *See* 7B Fed. Prac. & Proc. Civ. § 1807 (observing that district courts have "uniformly" rejected the argument that *Dukes* affects the FLSA's "similarly situated" requirement). Under section 216(b), if the party plaintiffs are similar in some respects material to the disposition of their claims, collective treatment may be *to that extent* appropriate, as it may *to that extent* facilitate the collective litigation of the party plaintiffs' claims. District courts have ample experience managing cases in this way. For example, Rule 42, which offers a closer analogy to the collective mechanism than Rule 23, already provides for the possibility of partial consolidation for trial, to the extent separate actions involve common questions of law or fact. Fed. R. Civ. P. 42(a)(1).

The second flaw of the ad hoc test lies in its "fairness and procedural considerations" prong. Such an open-ended

inquiry into the procedural benefits of collective action invites courts to import, through a back door, requirements with no application to the FLSA — for example, the Rule 23(b)(3) requirements of adequacy of representation, superiority of the group litigation mechanism, or predominance of common questions. Again, the FLSA does not give district courts discretion to reject collectives that meet the statute's few, enumerated requirements. *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012). To the contrary, the FLSA gives party plaintiffs the power to decide in what form they wish to proceed, for "Congress has stated its policy that [party] plaintiffs should have the opportunity to proceed collectively." *Hoffmann-La Roche*, 493 U.S. at 170.

That is not to say that "procedural considerations" can never justify decertification. A "collective" action in which, as a practical matter, no material dispute truly could be heard on a collective basis would hardly be consistent with the FLSA's remedial purpose. But if the party plaintiffs' FLSA right to choose collective litigation has any force, "procedural considerations" must mean more than the inconvenience, from the court's or defendant's viewpoint, of the party plaintiffs' choice. Importantly, the theoretical alternative to collective litigation is the possible proliferation of individual actions — in the present case, *thousands* of individual actions — litigated seriatim. *See Morgan*, 551 F.3d at 1265. Accordingly, at this second step of the ad hoc test, decertification of a collective action of otherwise similarly situated plaintiffs cannot be permitted unless the collective mechanism is truly infeasible.

### c. *The district court's analysis*

The district court's approach to decertification in the present case offers a useful example of both flaws of the ad

hoc test. The Officers' position was that there was a tacit, Department-wide policy discouraging the reporting of earned overtime. If that allegation were adequately supported by the record, the "similarly situated" requirement would have been met. The Officers would have been alike in a way material to their litigation, as proving (or failing to prove) the existence of such a Department policy would have affected the ultimate findings regarding the occurrence of unpaid overtime and the City's knowledge of it, *see* 29 C.F.R. § 785.11, thus collectively advancing the litigation.

In applying the ad hoc test, however, the district court focused less on whether there was adequate evidentiary support for the posited policy and more on the overall sameness of the Officers' employment circumstances. For example, the district court emphasized that Officers worked on different tasks, in different divisions, and under different supervisors. Those distinctions would not have mattered to the determination of liability if it were proven, as claimed, that the Department had an overall policy against submitting small overtime claims. *See Morgan*, 551 F.3d at 1264. A systemic policy is no less common across the collective if those subject to it are affected at different times, at different places, in different ways, or to different degrees. *See, e.g.*, *Klimchak v. Cardrona, Inc.*, No. CV-09-04311 (SJF)(ARL), 2011 WL 1120463, at *5 (E.D.N.Y. Mar. 24, 2011) ("[I]f defendants had a policy or practice of not paying overtime compensation to any of its laborers, whether full-time or part-time, union member or non-union member, all of those employees would be similarly situated for purposes of this analysis.").

The district court emphasized also that the Officers worked different hours and claimed overtime of different

amounts, including some amounts that might have been de minimis. But those distinctions go to the individualized calculation of damages or the individualized application of defenses. Such distinctions do not preclude collective treatment for the purpose of resolving the common issue that *does* exist, and that must be answered in the first instance. *See, e.g.*, *Bouaphakeo v. Tyson Foods, Inc.*, 765 F.3d 791, 797 (8th Cir. 2014), *aff'd*, 136 S. Ct. 1036 (2016).

Nor are individualized damages calculations inherently inconsistent with a collective action. In the wage-and-hour context, if a common question regarding the employer's liability is answered in the plaintiffs' favor, individualized calculations of work hours may readily be addressed with any of the practices developed to deal with Rule 23 classes facing similar issues. *See Jimenez v. Allstate Ins. Co.*, 765 F.3d 1161, 1167 (9th Cir. 2014). "[T]he amount of damages is invariably an individual question and does not defeat class action treatment." *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (quoting *Blackie*, 524 F.2d at 905). Individual damages amounts cannot defeat collective treatment under the more forgiving standard of section 216(b) either.

In effect, using the ad hoc test, with its focus on differences rather than similarities among the party plaintiffs, improperly led the district court into an approach that treats difference as disqualifying, rather than one that treats the requisite kind of similarity as the basis for allowing partially distinct cases to proceed together.

In sum, we reject both extant approaches to the FLSA's "similarly situated" requirement. We reject the minority approach because it is founded on an untenable analogy to class action practice and Rule 23. We reject the majority

approach — at least as it is typically articulated[21] — because it inadequately accounts for the meaning of "similarly situated" in the FLSA context and improperly sanctions the decertification of collective actions the district court finds procedurally challenging.  Party plaintiffs are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims.  The district court may be able to decertify where conditions make the collective mechanism truly infeasible, but it cannot reject the party plaintiffs' choice to proceed collectively based on its perception of likely inconvenience.

### 3

We turn to the standard the district court should apply in evaluating a post-discovery motion for decertification. Determining the proper legal standard is a question of law,

---

[21] We do not intend to preclude the district courts from employing, if they wish, a version of the ad hoc test modified so as to account for the flaws we have identified.  Nor do we intend to preclude the district courts from employing any other, differently titled or structured test that otherwise gives full effect to our understanding of section 216(b).

We also note, without expressing an opinion as to the merits of such an approach, that the Tenth Circuit recently approved a district court's use, in the collective action context, of an analogy to the defunct procedure for "spurious" class actions.  *In re Chipotle Mexican Grill, Inc.*, No. 17-1028, 2017 WL 4054144, at *2 (10th Cir. Mar. 27, 2017) (unpublished).  Spurious class actions, which were available under the pre-1966 version of Rule 23, allowed plaintiffs to litigate en masse if they asserted a "several" right, shared a "common question of law or fact affecting the several rights," and sought "common relief."  Fed. R. Civ. P. 23(a)(3) (1965).  Such class actions were "spurious" in the sense that, unlike true class actions, but similar to collective actions, they required each plaintiff to join the litigation individually.  *See Kinney Shoe*, 564 F.2d at 862.

so we proceed de novo.  *United States v. Hinkson*, 585 F.3d 1247, 1261–62 (9th Cir. 2009) (en banc).

Because preliminary certification is not challenged in this case, we address only the standard the district court should apply to post-discovery decertification.  We conclude that, in a case such as this one, in which decertification overlaps with the merits of the underlying FLSA claims, the summary judgment standard is the appropriate one.

Decertification, in the sense the term is typically used, comes after relevant discovery is complete, and in that respect resembles a motion for summary judgment.  *See Mickles*, 887 F.3d at 1276; *Anderson*, 488 F.3d at 953; *Thiessen*, 267 F.3d at 1102–03.  "At this point, the district court has a much thicker record than it had at the notice [*i.e.*, preliminary certification] stage," so, as with a post-discovery dispositive motion, "the plaintiff bears a heavier burden." *Morgan*, 551 F.3d at 1261.  The circuit courts have generally not described that burden in any detail, emphasizing only that decertification is "more demanding" than preliminary certification, *Mickles*, 887 F.3d at 1277, "more closely examine[d]," *White*, 699 F.3d at 877, and subject to a "stricter standard," *Thiessen*, 267 F.3d at 1103.  However, the district courts have gradually tended to coalesce around a standard they refer to as "substantial evidence." [22]

---

[22] This approach is widely used within this circuit.  *See, e.g.*, *Sargent*, 171 F. Supp. 3d at 1079; *Stiller*, 298 F.R.D. at 631; *Beauperthuy*, 772 F. Supp. 2d at 1118; *Reed*, 266 F.R.D. at 449; *Smith v. Micron Elecs., Inc.*, No. CV-01-244-SBLW, 2005 WL 5336571, at *2 (D. Idaho Feb. 4, 2005).  And it is widely used elsewhere.  *See, e.g.*, *Blair v. TransAm Trucking, Inc.*, 309 F. Supp. 3d 977, 1001 (D. Kan. 2018); *White v. 14051 Manchester Inc.*, 301 F.R.D. 368, 374 (E.D. Mo. 2014) (quoting *Martin v. Citizens Fin. Grp., Inc.*, No. CIV.A. 10-260, 2013 WL

The "substantial evidence" standard is not well-explained, nor are the reasons for its adoption. However, given the parallels between post-discovery decertification and partial summary judgment on the question of entitlement to the collective action mechanism, the standard has a certain logic. As it normally manifests itself in district court, substantial evidence is the standard for denying judgment as a matter of law during or after trial. *See Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007). "Substantial evidence is such relevant evidence as reasonable minds might accept as adequate to support a conclusion even if it is possible to draw two inconsistent conclusions from the evidence." *Reese v. County of Sacramento*, 888 F.3d 1030, 1047 (9th Cir. 2018) (quoting *Landes Const. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir. 1987)). The standard is therefore a mid- or post-trial analogue to the test applied at summary judgment, which asks, pretrial, whether sufficient evidence exists to preclude a judgment as a matter of law because, viewing the competent evidence in the light most favorable to the nonmoving party, the trier of fact could properly find for the nonmoving party. *See* Fed. R. Civ. P. 56(a); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The Third Circuit, uniquely, has identified a different standard for evaluating decertification motions. In *Zavala v. Wal Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012), the Third Circuit concluded that a preponderance-of-the-evidence

---

1234081, at *3 (E.D. Pa. Mar. 27, 2013)); *Creely v. HCR ManorCare, Inc.*, 920 F. Supp. 2d 846, 857 (N.D. Ohio 2013); *Frye v. Baptist Mem'l Hosp.*, No. CIV. 07-2708, 2010 WL 3862591, at *2 (W.D. Tenn. Sept. 27, 2010), *aff'd*, 495 F. App'x 669 (6th Cir. 2012); *Brooks v. BellSouth Telecomms., Inc.*, 164 F.R.D. 561, 566 (N.D. Ala. 1995), *aff'd*, 114 F.3d 1202 (11th Cir. 1997).

standard, the default standard in civil actions, should apply. *Id.* at 537. However, at least as applied to the present context, where the decertification question and the merits overlap, *Zavala* is unpersuasive. A preponderance of the evidence is, as *Zavala* noted, the default standard in a civil case. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 387 (1983). But more precisely, it is the default civil standard for the plaintiffs' "ultimate burden of proof." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 857 (9th Cir. 2002), *aff'd*, 539 U.S. 90 (2003); *see Huddleston*, 459 U.S. at 387. It does not follow that pretrial motions need be evaluated under a preponderance-of-the-evidence standard. Plaintiffs satisfy their "burden" at the pleading stage with allegations that "plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. They satisfy their "burden" at summary judgment with evidence creating a genuine dispute of material fact, *see Nissan Fire & Marine Ins. Co. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000), such that a trier of fact could properly find for the nonmoving party once the preponderance-of-the-evidence standard is applied at trial. Accordingly, to the extent decertification and summary judgment on the merits present the same question, it should be the ordinary summary judgment standard, rather than a preponderance-of-the-evidence standard, that applies.

Here, for instance, the Officers' allegations of an unwritten, Department-wide policy discouraging the reporting of overtime do double duty. They provide a basis for collective treatment, as they raise a similarity of fact or law whose disposition would advance the litigation of the Officers' FLSA claims. And, relatedly, they go directly to the merits of the individual Officers' claims, as proving the policy at trial is essential to the Officers' FLSA theory, including their satisfaction of the FLSA's knowledge requirement. *See* 29 C.F.R. § 785.11. It follows that, in this

case, a post-discovery decertification motion does double duty as well.  It is, in effect, indistinguishable from a motion for partial summary judgment limited to the question of whether an unwritten, Department-wide policy existed.  *See* Fed. R. Civ. P. 56(a).

Put differently, to the extent overlap exists between the availability of the collective action mechanism and the merits of the underlying claim, challenges to the former are no different from challenges to the latter, and so should be analyzed under the same standard.  In the present posture of this case — a post-discovery decertification motion — that standard is summary judgment.  If it were otherwise, a decertification motion could become an end run around the submission of factual disputes to the trier of fact.

It follows that, to the extent decertification overlaps with the merits, a district court cannot weigh the evidence, as ordinary summary judgment practice precludes doing so.  The collective mechanism is meant to ensure that party plaintiffs have the option of benefitting from the efficiencies of collective litigation — including, in cases presenting genuine disputes of material fact, collective access to trial.  That principle is not consistent with allowing district courts to break apart the collective based on their own resolution of merits questions otherwise reserved to the trier of fact.  If there is a merits dispute that would survive summary judgment on which the disposition of decertification also depends, the merits dispute should be tried.  Whether the question will be answered favorably or unfavorably is for the trier of fact.  *See, e.g.*, *Johnson v. Big Lots Stores, Inc.*, 561 F. Supp. 2d 567, 567, 579–80 (E.D. La. 2008) (decertifying a collective action premised on a "uniform policy or practice" after a trial on that and other questions).

In sum, to the extent the decertification issues overlap with the merits, we agree with the district courts' widely held view that the standard on a post-discovery decertification motion is effectively the summary judgment standard. *See supra* note 22. We emphasize, however, that as with a motion formally styled as summary judgment, the district court may not, on a merits-dependent decertification motion, weigh evidence going to the merits. If collective treatment is premised on a genuine dispute of material fact as to the merits of the party plaintiffs' FLSA claims, the collective action cannot be decertified unless the factual dispute is resolved against the plaintiffs' assertions by the appropriate factfinder.

**B**

We turn now to the substance of the district court's decertification order.

As an initial matter, the district court's approach to decertification was legally incorrect in two respects. First, as already discussed, the district court applied an overly demanding test of the FLSA's "similarly situated" requirement. *See supra* Part IV.A.2.c. Second, although the district court recited the substantial-evidence standard, which is an adequate statement of the summary judgment analysis, it weighed evidence regarding the existence of a Department-wide policy.[23]

As with a motion styled summary judgment, however, we need not remand for reconsideration when the district

---

[23] The district found, for example, that the largely "boilerplate" nature of the Officers' declarations "call[ed] into question the declarations' credibility."

court applies an improper standard, as our review is de novo. *United States v. City of Tacoma*, 332 F.3d 574, 578 (9th Cir. 2003). Under de novo review, we may affirm if we conclude, as a matter of law, that the record does not reveal a genuine dispute of material fact as to the existence of a Department-wide policy discouraging the reporting of overtime. We do so conclude.

The key problem for the Officers in providing evidence of the Department-wide policy they allege is one of scale. That the policy is Department-wide is essential to the viability of the collective action, as it is the sole justification advanced for a Department-wide collective. Yet the evidence in the record is simply not probative of an unwritten overtime policy of that breadth.

The Officers' primary contention appears to be that there exists a kind of tacit policy that operates top-down, such that an inference may be drawn that the policy applies Department-wide. As the district court noted, however, the evidence the Officers have produced — a mass of individual declarations, mostly containing rote recitations of hours worked and bare assertions of a certain Department "culture" — has a fundamentally different focus. The Officers' declarations speak of immediate supervisors at discrete worksites. And even then the evidence is not of a uniform practice from which one might infer direction from a higher level, but of variable practices variably applied. Critically, there is *no* evidence of any directives, incentives, conversations, emails, or actions (such as denials of promotions) by Department leadership that could have communicated to local supervisors, implicitly or otherwise, a uniform policy against reporting small amounts of overtime.

Furthermore, there is no evidence to suggest that the declarants' vaguely reported experiences are in fact representative of the experiences of the party plaintiffs Department-wide; the only evidence in the record is that they are not.

First, the Officers offer no sampling or expert statistical evidence tying the declarants' statements to the experiences of the party plaintiffs or of the workforce generally. The declarations are too limited in individual detail to support an inference that failure to report specific instances of overtime was tied to a policy from above. Nor have the Officers presented evidence — lay or expert, anecdotal or statistical — that the City's overtime claims process, or the enforcement of it, was somehow structurally inadequate, or implemented Department-wide in a way that inhibited the accurate reporting of overtime. Furthermore, as the district court noted, many of the declarants who claim they were first taught not to report overtime during their training at the Police Academy "were members of Academy classes that substantially pre-date[] the [D]epartment's promulgation of the current [written] overtime policy."

Second, although the Officers' declarations are creditable evidence of instances of unpaid overtime, when it comes to the issue of a Department-wide policy, they run up against the City's overwhelming evidence of widespread FLSA compliance. It is undisputed that 330,000 overtime claims in amounts of less than one hour were filed during the relevant period, including 64,000 by the party plaintiffs themselves. Confronted with that contradiction, lacking affirmative evidence of a structural problem, and in light of the Department's widely disseminated written policy requiring that overtime claims be filed, no reasonable trier of

fact could conclude that the City fostered or tolerated a tacit policy of noncompliance.

## V

Absent substantial evidence that the City fostered or tolerated a tacit, systemic policy against the reporting of overtime, there is no genuine dispute of fact as to the only allegation the party plaintiffs have cited as a basis for proceeding in a Department-wide collective. The collective action was therefore correctly decertified and the opt-in plaintiffs correctly dismissed.

**AFFIRMED.**

# APPENDIX

## *Campbell v. City of Los Angeles*, No. 15-56990

*Plaintiffs-Appellants*: Daniel Campbell; Michael Fox; Ruzanna Luledzhyan; Humberto Jaime; Jerritt Severns; Joanna Linfield; Donald Linfield; David J. Tavizon; Christopher J. Luma; Marco A. Rodriguez; Russell Kilby; Christopher J. Kunz; Terry Johns; Michael P. Flynn; Randall Allen Garrett; Kenneth M. Montague; Kit Anthony Stajcar; Timothy E. Kohl; John C. Flores; Richard Gabaldon; Joseph M. Payton; Robin R. Brown; Billy Joe; Stacey Seymkowiak; Inge Yolanda Bowman; Manning; Velasco; Heather A. Gageby; Gerardo J. Davila; Adrian E. Koval; Agnos Amarantos; Jeffrey Stewart; Lopez; Mitchell G. Lambdin; Eric Hernandez; Michael Moriah Knoke; Manuel Madren; Megan D. Glaister; James H. Williams; Brett M. Clark; Roger Fontes; Ouahdi Monlacktena; Jude Washington; John Banelos; Ramon Martinez; Oscar Gamino; Mell Hogg; Richard J. Lopez; Jaime Zarate; George Chavez; Andrew Moody; Michael O'Connor; Eric Holguin; Jeremy Allen Escamilla; Cedric Washington; Asatur Mkrtchyan; Jason M. Burcham; John Shin; Peter Bueno; Anthony Ortiz; Christian Rueda; Philip Thompson; Richard Suvlate; Warren Pulley; James Quinones; Minh Nguyen; Joseph Yamzon; Theodore P. Maillett; Shawn Massey; Peter Lee; Fred C. Starkey, Jr.; Jude T. Washington; Steven Marin; Yvette Perez; Letricia Lopez; Leanna Rosenkild; Patricia Batts; Angelo Stewart; Jesus Bazan; Todd Behrens; Sonny Garcia; Solve Loken; Juan Gonzalez; Angela R. McGee; Michael Williams; Rick M. Roy; Michael A. Pytel; Andre Wright; A. Wright; Tanya Eppenger-Campbell; Morris Batts; Charles Tizano; Albert C. Mora; Charles A. Howard; Stephanie Tuller; Manuel Segura; Darryl Bernard McGreggor; Tarriel Hopper; Phillip R. Watson; Renee A. Minnick; Francine Spada; Erin

Gabaldon; Carlos R. Ortega; Ramiro Cabrera; James A. McSorley; Alberto Del Valle; Elizabeth Boccanfuso; Giovanni Boccanfuso; Efren J. Corrac; Yasir Gillani; Joseph Pudelwitts; Jane Elizabeth Russom; Robert Casimiro; Angie Whetstone; Mike D. Nelson; Heather McLean; Nina Brown; Nelson D. Scroggins; Benedict J. Fernandes; Christopher Formby; David Jamieson; Ken Cabrera; Charles Garcia; Rogelio Ramirez; Catarino Perez; Rudy Chavez; Mario Gamez; Ackley Kane Mayer-Tucker; James D. Crawford; M. Rene Chavez; Issac Lowe; Carlos E. Ayala; Lisa Moore-Crawford; Edward P. Castro; David Manriquez; Philip Alaniz, Jr.; Aaron Skiver; Michael Yoro; Alonso Ramirez; Lisa Ruegg; Russell Long; Angel Salvador Bonilla; Alexander R. Alvarez; Karla Barraza; Vincent J. Correa; Donna J. Watkins; Richard Melendez; Darryl Brown; Charles Wunder; Luis Alvarado; Joseph Ciancanelli; Christopher Blankenship; Alejandro Arredondo; William M. Young; David Redd; Antonino Giambruno; Andres Cruz; Rene Zavala; Matthew Saenz; Adrian Chin; Marlon Fields; Henry Colebrooke; Ritchie Tijerina; Marco Vargas; Sonia Rimkunas; John Lawrence; Gary Eagleson; Dennis Lada; Anthony Aceves; Terry Keefer; Angel Cervantes; Douglas Workman; Anthony Perez; Michael Williamson; Gina Chovan; David Abdalian; Diosdado Coronel; Robert Andreno; Robert Williamson; Jorge Cruz; Victor Suapaia; Sean Meade; Brian Malneritch; Gregory Fuqua; Gerardo Vazquez; Victor Alvarez; Jaime Roussett; Carlos Mercado; Patrick Marmolejo; Ryan Whiteman; Richard Romney; Scott Koegel; Yvonne Whiteman; Wallace Wall; Pavel Gomez; Dave McDowell; Lisa Gallegos; Jesse James; Shon Wells; Vincent Stroway; Michael Pauley; Roberto San Roman; Steve Griffith; Timothy T. Rolsen; Peter Vasquez; Alan Aldegarie; Ralph Camarillo; Ray Denton; Neal Peterson; Robert Gonzalez; Jeremy Duncan; Ray Hallenbeck; Robert Cosner; Peter Sanchez; Will Munoz;

Efren Acosta; Alan Little; Jesse Sanchez; Rigo Bonilla; Marvin Brent; Lori Sanchez; Sunti Singhanate; Pedro Cordero; Abe Rangel; Mark Dimitt; Robert Aguilar; Patricia Smith; Alejandro Izquierdo; Bryce Verna; Joanne Needham; Catherine Massey; Frank Bancalari; Julio Umana; Patrick O'Dea; Ray Jeter; Jaime McBride; Miguel Barajas; John Bigrigg; Gina Meza; Maggie Sherman; Mario Ontiveros; Jeffrey Leu; Patricia Guessferd; Fernando Ochoa; Javier Sanchez; Leonard Johnson; Willian Proctor; Lamont Jerrett; Jacob Snow; Douglas Panameno; Steve Zavala; James Vena; Robert Deamer; Phillip Carr; Darell Matthews; Oscar Prado; Daniel Odoh; Robian Tango; Anthony Perez; Don Montelibano; Demetrio Mendoza; Regina Nares; William Gutierrez; Gary Nanson; Peter Laundelius; Barry Bottai; Randal Bowman; Raffi Khandikian; Benjamin Zuckerman; Hilton Henry; Rudy Gonzales; Richard Oke; Kelly Edwards; David Ham; Lane Bragg; Angelo Castro; Dan McCoole; Justin Mudgett; Paul Menchaca; John Chilstrom; Jimmy Martinez; Richard Krynsky; Cameron Carrillo; Edward Rocha; Michael Belmonte; Carolyn Coward; Timothy Wunderlich; Jason Armendariz; Claudia Gray; Emerson Holder; Mark Pompano; Paul Floge; Anthony Ramos; Cynthia Gomez; Osacar Villarreal; Robert Takanashi; Mark Ramirez; Michael Shea; Shawn Stevens; David Rosenthal; Matt Jacobik; Stephanie Southerland; John Key; Eloy Ochoa; Dennis Nelson; Oscar Lopez; Robert Knight; Ernie Schoop; Rolf Knuth; John Kim; Robert Gallegos; John Gomperz; Rodolfo Lemos; Scott Blackman; Issac Lowe; David Cueto; Adrian Ferns; David Tello; Chad Costello; Thomas Bergren; Patrick Beighley; Jennie Wong; Kyle Lee; Kris Davis; Daniel Gregg; Albert Gonzalez; Gonzalez; Barry Brooks; Steven Cohen; Greg Andrachick; Joseph Satow; Linda Thompson; Jonathan Goode; Peter Hopkins; Michael Rex; Bradley Schumacher; Paul Clements; Robert Yanez; Rene Acosta; William Heider; Martin Martinez; Juan

Zarate; Jose Ortega; Frank Montelongo; Antonio De La Torre; Jackie Fort; Jose Diaz-Ibarra; David Armas; Anthony Smith; Todd Carpenter; Robert Ruiz; Paul Waymire; Andrew Chase; Sandra Magdaleno; James Sterling; Jose Mireles; Mary Culpepper; Juan Cruz; Oscar Cansino; Dennis Clifford; Maryann Bunag; Michael Rippe; Michael Rubin; George Bashai; Matthew Bakotich; David Benioff; Ronald McNally; Jeffri Norat; Jose Verdin; Yvette Perrodin; Mike Gilbert; Emery Newsom; Holland Holland; Alexander Kordis; Jerry Lucio; James Mark Arenas; Todd Bridges; Ruben Gutierrez; Leonard Garza; Andre Dixon; Richard Compton; Greg Bruce; Anthony Cole; Darryl Danaher; Osmund Bouligny; Ron Lagrassa; Ruzanna Luledzyan; Terry Saleono; Victor Mencias; Michael Knoke; Guadalupe Alaniz; Kenneth Buscarino; Canales Canales; Kevin Cotter; Cominic Counts; Guy Faltinowski; Carlos Lozano; Ramon Mejia; Valentine Reyes; David Salcedo; Anthony Tejada; Thomas Wicks; Clarence Williams; Stephen Winter; Theodore Williams; Frank C. Montelongo; Christopher Clark; Bruce Murdoch; Song Suh; Paul Avila; Randy Peterson; Gregory Probst; Christine Wycoff; Len Lai; Travonne Dixon; Kristan Zalokar; Arnold Porter; Cathy Luke; Pedro Benavides; Stacy Pierce-Rogers; Chiquita Brown; John Porras; Tom Gracey; Alan Bone; Stephen Gordon; Edmond Yagubyan; Money Scott; Steve Vera; Anthony Magaleno; Robert Martinez; Robert Vasquez; Chris Chavez; Antonio Rodriguez; Edward Silva; Carlos Quintero; Michelle Thomas; Nicholas Sysak; Cynthia Barlow; Henry Mendoza; Merita Woodle; Joseph Terena; Brian Koren; Richard Roberts; Ivan Vintimilla; Gary Verge; Dean Monteleone; Traci Grundland; Douglas Kirkland; Scott Teubert; Debbie Luker; Murrell Pettway; John Pasquariello; Tim Olsen; Rossum; Lupe Palomares; Jerry Kowalsky; James Chong; Javier Vargas; Andres Gallagher; Andrew Gallagher; Arthur Grein; Jason Zapatka; Robert

Lewis; Julie Browne; Derek Sledge; Jose Salcedo; Michael Saghera; Ramiro Ruezga; Gil Padilla; Tony Fitzsimmons; David Carbajal; Suzan Nelson; Jeff Nelson; Tim Galli; Rodrigo Rodriguez; Stanley Schott; Dale Ziesmer; Ronald De Wyke; Kenneth Richard Vanhooser II; Virgil Casstor; Kenneth Hurley; Mayda Espinoza; David Kong; Bobbie Covington; Ronald Wyke; Maria Morrison; Becky Strong; Jennifer Vass; Neil Wank; Melvin Durant; Catherine Durant; Larry Covington; Javier Borrego; Lonnie Benson; Frank Amador, Jr.; Joseph Morrison; Arturo Yanez; Christopher Campagna; Gilbert Murillo; Fred De La Cerda; Karena Rowan; Vickie Nguyen; Edward Yoon; Gregory White; Adam Hollands; Sal Ogaz; Robert Quezada; Marston Taylor; Robert Golden; Robert Murray; Susan Willis; Salvador Jaramillo; Woon Chong; Lisa Gropp; Mauricio Vargas; Martha Jaime; William Driver; Omar Cedre; Laura Curtin; Young Honor; Robin Jones; Roberto R. Lopez; David Love; Richard Mossler; Tim O'Gorman; Michael Stalnecker; William Snowden; Alex Tellez; Paul Von Lutzow; Pedro Machuca; Owen Mills; Don Sasaki; Marc Tessier; Alfonso Villaneda; Gary Weller; David Stirling; Jeff Merlo; George Mejia; Elliott King; Frank Garcia; Raphael Ferrer; James Eldridge; John Downey; Gerardo Davila; Raquel Cruz; Mike Cassetta; Fred Brignoni; Paul Bowser; Andre Baydaline; Ralph Barone; Raymond Ygual; Doug Gallaher; Timothy Dacus; Gerardo Madera; Manuel Sierra; Frank Lopez II; Terence Klafke; Benjamin Hetzler; Vincent Deglinnocenti; John Cordova; Martin Franco; Gary Bean; Brandon Mamrot; Jeffrey Tint; Charles Hawley; Danny Roman; Francisco Gonzalez; Daniel Robinson; Jamie Smerdel; Alan Thatcher; Reggie Dickerson; Dana Grant; Nicholas Milazzo; James Poon; Belinda Robinson; Ignacio Mijares; Liavaa Moevao; Juan C. Campos; Donald Richards; Monica Quijano; Steven Muirhead; Jaime Anchondo; Tanza Smalls; Raymond Hernandez; Jay

Mastick; Nelson Ramaya; Adam Altamirano; Paul Lawson; Scott Engedal; George Bowens, Jr.; Jesus Ravega; Tina Glenn; Steven Stear; Scott Murachver; Javier Montenegro; Peggy Moseley; Juli Dawn Munson; Tracie L. Noggle; James Noss; Christopher O'Donnell; Christy Donorovich-O'Donnell; Ralph Brown; Stephen Bucher; Kimberly Cisco; Arno Clair; Kelly Clark; Richard Davis; Leonard Drayton; Arthur Duran; Paul Espinoza; Arldwin Flores; Hugh O'Gara; Elipido Orozco; Maria Orta; Timothy Gallick; Brian Gan; Michael Goldstein; James Goodwin; Robert Guevara, Esquire, Attorney; Oscar Gutierrez; Nicholas Hartman; Ryan Hicks; Kevin Holland; George Hoopes; Leonel Borja; Lee Jensen; Christopher Jordan; Charles Joseph; Ho Kim; Denny Leopoldo; Ernest London; Robert Lopez; Robert Luna; Richard Luskleet; Raymond Madrid; Saul Carrillo; Kelly Chrisman; Joseph Dominguez; Yolanda Echols; Robert Felix; Robert Fernandez; Edgar Magat; James Mankey; William Marbley; Chris Marshall; Gabriel Martinez; David Mascarenas; Matthew Meneses; Pablo Monterrosa; Stacey Morris; Edward McGowan, Jr.; Paul McKechnie; James Onthank, Jr.; William Orndorff II; Isaias Ornelas; Adam O'Neill; Robert Paterson; Scarlett Paterson; Joseph Pelayo; Floro Pinzon; Jary Quinones; Luis Robles; Guadalupe Ruiz; Terry Mattox Ruppel; Richard J. Russell; Kristine Salazar; Dean Schram; Robert Snedden; S. Owens; Jeffrey Pelczar; David Podesta; Annette Potts; James H. Quinlan; Bobby Ramero; Steven Rausch; Frank Schweitzer; Jeffrey Stapleton; Jeffrey X. Vach; Paul Valencia; Abraham Vidriezca; Matthew Vocke; Terrell West; Gregory Owens; James Rahm; Osbaldo Ramos; Stephen Redd; Anthony Reitz; John Rice; Michael Rimkunas; Johnny Sanchez; Erik Schick; Jerry Siel; John Smith; Michael Smith; Steven Smith; Terry Shelley; Gloria Snipes; Ronald Stamps; Kelly Sullivan; Peter Waack; Richard Wall; David Wren; Maria Yamamoto; Fred Yamamoto; William Young; William F.

Justice; Trevor Jackson; Margaret Henry; Crystal Hayes; Richard J. Garibay; Mauricio Garcia; Lisa Garcia; Gilbert Garcia; Ernest Eskridge; Angel Domenech; Marlo V. Cross; Robert F. Chavira; Felicia Ann Bailey; Roger G. Archambault; Fernando Alvarez; Julio Benavides; Jennifer Lee Hammer; Richard Gurrola II; Stephen Glick; Robert Jon Duke; Daniel Chilson; Kenneth Richard Lewis; Michael J. Lorenz; Justin Malcuit; Robert Martin; Gorgonio Medina; Juvey Mejia; David Harris; Mark Henry Hernandez; Raymond M. Hernandez; Michael W Hill; Enrico P. Hizon; Woravoth Iddhibhakdibongse; Michael Jolicoeur; Yolanda Caterino-Clair; Anderson Boyce; Carl Barnhart; Joyce M. Banuelos; Sandra Valle; Joseph Taylor; Eddie N. Solomon; Carlos Savedra; Brian Reynolds; Daniel Putnam; Joseph O'Donnell; James Swift III; Victor Nunez; Season Nunez; Emigdio Neri; Tyrone Moore; Christopher Martinez; Joseph Linares; Gregg Webber; Michael Seguin; Fredger A. Alexander; Mark Aragon; Marlene Arguello; Ralph Arzate; Rudolph Baca; Keith Washington; Steven Bishop; Eric Bixler; Edward Viadaillet; Gerardo Vejar; Michael Tomelloso; Clarence Speer; Mage Gene Simerskey; Amy Wong; Douglas Roller; Mario Ramirez, Jr.; Perry Moore; Brent McGuyre; James C. Marshall; Corinne L. Malinka; James MacDonald; Joan Leuck; Antonio Lacunza; Rayney L. Arnold; Juan C. Amancio; Iris Santin; James Redman; Kulin Patel; Ryan Nguyen; Kevin McNamee; Kevin Malm; Kenneth Kuntuzos; Robert White; Jeff Lutzow; John Richardson; Ernesto Munoz; Ramon Muniz; Francisco H. Hurtado; Michael Huff; Teresa Hernandez; Jose Contreras; Osvaldo J. Castillo; John Bart Juarez; Charles Hicks; Cheryl Gonzalez; Ricardo Feria; Mario Cruz; Michael Amado; Jason Abner; Dale Lopez; Danny Jiminez; Irsie Lee Henry; Shawn Havican; Nathaniel Hampton; Victor Gutierrez; Joe Galindo; Dimitrius Connor; Michael Arteaga; Juan R. Arenas; Bill J. Wilson; Anthony Vilardo; Michael Valencia;

Lon Truong; Alan Sorkness; Rick Rodgers; Engelbert Quechenberger; Cesar Leal; Sharon J. Kroger; Michael Karatsonyi; Roscoe Jolla; Rudy De La Fuente; Victor Corral; Laura Cook; Jose Carias; Mitchel S. Windsor; Dale Washburn; Warren Tojong; Jeffrey Tiffin; Kandis Schmidt; Raymond L. Rangel; Lisa Phillips; Christopher Paterson; Steven Moody; Jose Maldonado; Mark Campell; Donna Wheeler; Vincent Vicari; Matthew L. Vannatter; Michael Valdes; Stephen Underwood; Michael Samuel Tirella; Rosibel Smith; Henry Servin; Julie Rodriguez; Tanya Rodda; Raul Porras; Richard L. Platzer; Michael E. Oppelt; Hector Olivera; Joseph Napolitano; Angelean Montero; Lawrence Martinez; James K. Lenoue; Ronald Von Gober; Paul Glascow; Deborah Fetters; David Dimeglio; Napoleon Curry; John Cook; Thomas E. Cleary; Todd Burns; Timothy Branley; Miguel Aguayo; Thomas E. Kirk; Jorge A. Gutierrez; Enrique R. Gutierrez; Jack A. Giroud; John D. Gardner; Lisette Garcia; Ken Furuta; Peter Durham; Jason Duplantis; Oscar Duenas; Cynthia J. Dragun; Carlton M. Brown; Lisa Wernli; Karen J. Smith; Howard Silverstein; Michael R. Pelletier; James J. Panek; Michael K. Ozaki; Scott Ogata; Ray Moreno; Roderick Miller; Connor Mac Ivor; Joshua Lukaszwski; Alfonso Alfaro; Miguel Arambula; Martin Barocio; Francis J. Bolan; James R. Browning; George Bush II; Wallace Carr; Jin Cho; Elva Coats; Robert W. Coats; Vic Corella; Rickey Crowder, Jr.; Ricky Davis; Robin L. Downey; David Herskowitz; Gary Holbrook; Eric O. Jones; Kenneth V. Koch; Lauro R. Larrinua; Hipolita Lizarraga; Manuel Alvarez; Maribel Arambula; Richard Aston; John J. Avalos; Ruben Banuelos; Alexander Bautista; Christopher Borunda; Paul Choung; John Coffey; David Corbet; Thomas Davoren; Tracye Fields; Michael Friesenhahn; Randolph D. Fukui; Sean Gonzalez; Jennifer A. Grasso; Joseph G. Graves III; Manuel Antonio Ibarra; Eric M. Johnson; Andrew J. Lassak; Daniel

Lee; Thomas F. Lee; Don Magers; Alma Mark; Claire Smith; Jonathan E. Smith; Gregory R. Staats; Joseph Marx; Raymond W. Mauss; Kenneth K. Moore; Daryl Ordone; John Padilla; Steven Stranak; Michael Switzer; Cinthia Tapia; Tony Trusk; Ryan Verna; Laura Windsor; Larry Wright; Robert Yanez; Del Bourgeois; Gregory Hancock; Cecilia Cleveland; Kurt Miles; Jeff Mares; Jerry Liggett; Rocael Rodriguez; Jose J. Perez; Carias Warner; Shawtrice Watkins; Reynaldo Perez, Jr.; Richard Plows; Terry L. Pratt; Richard M. Prindle; Sallyann S. Procaccini; Kenneth Quigley; Tyrhone Ragland; Mark W. Reed; Robert Rivera; Alex Gabriel Rodriguez; John D. Rodriguez; Sergio Ruedas; Timothy Ruiz; Timothy S. Schey; Daniel A. Schmidt; Ramon Argulles; Debra Winter; Manuel Vides; George Torres; Kelvin Scott; Andrea Sanfillippo; Alfredo Rodriguez; Thomas Malloy; Edward Maciel, Jr.; Marlon Prodigalidad; Brenda Morales; Sandra Lopez; John Knighton; Mark Griego; Richard Gordon; Jeanette Flores; Phillip Tate; Danny Jones; Jaroen Hitanukulkit; James R. Hays, Jr.; Gabriel Ferreras; Michael Briano; Steven M. Takeshita; Jose Santiago; Manuel R. Ramirez; Alfred Pasos; Blanca Pasos; Robert Longdon; Keith A. Green; Michael Joseph Diaz; Theresa Coyle; Andre Abrams; Andres Cardenas; Terry Barclay; Meghan Aguilar; Mario Aguilar; Dean Watts; Daniel Vasquez; Dionne Watts; Kimberly Snyder; Orlando Smith; James Muniz; Maria Montoya; Paul Miller; Leonardo McKenzie; Chun Yim; William Yarbrough; Eduardo B. Trinidad; Anthony A. Razo; Samuel Williams, Jr.; Stanley Wiedenhaupt; Christopher Walter; Ramirez; Karen Owens; Ralph Mendoza; Gerald Mears; Marlon Marrache; Miguel Lopez; John Gidowski; Neal Fine; Rodolfo Ramirez; Robert Valencia; Gerardo Velasco; Derek Sykes; Thomas Small; Singh; John Richardson; Richard J. Ramirez, Jr.; Pierre Olega; Alejandro Nava; Nicholas Lee; Marcos Villanueva; James Hutchins; Robert

Holcomb; Robert Hillard; Shelley Gallegos; Teresa Akune; Warner Carias; J. Padilla; Kenneth Nitschke; Jose A. Ferreira; Shawn Duke; Carlos Diaz; Duc Dao; Gary Cusick; Matthew Cundiff; James Clifford; Mark Cleary; Maurice Brunel; Raymond Broker; Edward Maciel; Joey Yanez; Edward E. Wheelis; Edison Z. Vistar; Hugo Valez; Julia Peat; Valentin Montesdeoca; Scott Moffitt; Adriana Bravo; Anthony Balderama; Sherwin Vigilant; Brandon Tuccillo; John L. Thomas; James Sands; Raul Rodriguez; Jason M. Pedro; Nicholas Noles; Daniel Mendoza; James Lopez; Keith Horeczko; Mustaffa Hassanzai; Joseph Gryder; Thomas Dawson; Jing Choa; Steven Beumer; Criselda Pedro; Marty Cotwright; Phillip J. Wright; Thomas W. Stone; Alex A. Pozo; Richard Mendoza; Rebecca Martinez; Hal Dexter Jones; Randy Hoffmaster; Jesus Hernandez-Soto; John J. Hatfield; Rebecca Martin; David Harrison; Matthew Fleming; Michael W Dunn; Howard Chan; Ernest Avila; Fred Tredy; Brent Josephson; Carlton Jeter; Jose D. Hurtado; Michael Hofmeyer; James Choi; David Sanchez-Soissons; John Licata, Jr.; David Lin; Josephine Mapson; Salvador Martinez; John M. Ray; Brodie Seagrave; Stephen Showler; Gregory Elias Trejo; Todd Costello; Jose Delgado; Charles Dickinson; Alma Burke; Salvador Flores; Sean Hansen; George Leiva; Louie Lozano; Georgia Odom; Alan Parra; Daniel Putz; Jose Salazar; Catherine Rymzsa Leon; Darren Stauffer; Rosa A. Torres; Teddy Amstone; Carlos Barrios; Maria Muro; Josue Merida; Michael Woodings; Donovan Michael Lyons; Earl Williams; Charles Urso; Heidi Stoecklein; Maurice Stewart; Daryl Scoggins; Rodney Rodriguez; Kyle B. Remolino; Paul Mosley; Armando Monarrez; Samer Issa; Paul Hong; Raymond Galluccio; Juan Arroyo; Donald Estrada; Randall Cordobes; Ryan Bellows; John Ayala; Richard Acosta; Jason Wesley; Brent Johnson; Samnal Hong; Rosemelinda Gutierrez; Fidel Gonzalez; Randy Garcia; Joe Flores; Ferdinand Faustino,

Jr.; Corinne Ernst; Manuel Delgado; Daniel Davis; John Caraveo; Michael Boylls; Doug McCombs; Antonio Martin; Ryan Marshall; Hector Lomelin; Victor Perez; Martin Perello; Michael Pavelka; Ricardo Oliva; Boris Oliva; Steve Nunez; Michael Morales; Bill Miller; Edward Tsai; Erik Sundstrom; Charles Strong; Charles Spicer III; Eric Spear; George Rock; David Solis; Gary Shanahan; Richard Sauer; Paul Sanfillipo; Teri Robinson; Miguel Gutierrez; Brian Zavala; John Zambri; Raymond Valois; Ray Robinson; Leon Ortega; Kimberly Mole; Sean Laule; Lashawna Pugh; Guy Juneau; Brian Joachimstaler; Damon Hogan; Michael Flynn; Alfredo Flores; Marie Farrell; David M. Escoto; John Chrispens; Leroy Block; Danny Shry; Kristopher Rollins; Alfonso Reyes; Robert Orlando; Steve Morris; Roger Morgan; Christopher Merrin; Craig Markel; Jeffrey Anderson; Ruben Martinez; Andre Louis; Jeanette Lawrence; Gonzala Lara; Michael Kozak; Lyle P Knight; Michael Hall; Jimmy Grayson; Alejandro Galvan; Hector Esparza; Joseph Dudas; Keith Davis; Jack Davenport, Jr.; Timothy Colomey; George M. Castro; Warner A. Castillo; William O. Batista; Michael K. Barz; Siamone Bangphraxay; Ruben Arellano; Michel A. Kozak; Alan Ramirez; Dwayne Wilson; Chris Scott; Luis Reyes; Juan Santos; Danny Odom; Stephen Merrin; Garry McQueen; Christopher McPheeters; Ben McPheeters; Kevin Lowe; William Larkin; Ricky Johnson; Richard Hoefel; Robert Harris; Gerardo Gutierrez; Jaime Gonzalez; Consuleo Gonzalez; Steve Garcia; Gary Ferrato; Ruben De La Torre; Ronald Cade; David Berumen, Jr.; Roy Ballesteros; Ashur Agena; Eri Poss; Marc Pooler; Carlos Velez; Michael Mitchell; Telly Epperson; Francisco Diaz, Sr.; Mario Arrizon; Christian Urbina; Richard Tamez; Richard Ramos; Randy Yoshioka; Carlos Sutton; Clancy Maihori; Amber McCallum; Gerald Legaspi; William Flannery; Jose De Leon; Lenning Davis III; Jose Covarrubias; Trevor Ziemba;

Jason Witt; Constance White; Sonya Tiefenbacher; John Stieglitz; Eugene Smith; Gabe Rodriguez; Luis Rodarte; Patrick Rimkunas; Edgar Ramos; Roseanne Parino; Joseph Avila; George Selleh; Ignacio Maurillo; Maria C. Marquez; Robert Lona, Jr.; Hsin-Yi Lo; Yin Y. Leung; Charles J. Garcia; David M. Fatool; Nelson Enamorado; Jason Curtis; Henry Covarrubias; Eric Campos; Anthony Ares; Pamela Ventura; Suzanna Lowry; Chris Giargiari; Matthew McNulty; Esteban Olivares; David Morales; Pedro Llanes; Shondie Jackson; Ted Reyland; Steven Ralph; Enrique Chavez; Elvis Hernandez; Tarek Ismail; Marcela Garcia; Steven Angulo; Robert Vargas; Carla Taylor; Christopher Razo; Jonathan Tippet; James Hagerty; George Goodyear; Emily Delph; Timothy Crabtree; Andrew Buesa; Ricardo Verduzco; Sandra Zamora; Carl E. Taylor; Christina L. Reppucci; Jesus Garcia; Scott Fairchild; Ricky Brown; Johnny Garcia; Felipe Benavidez, Jr.; Eddie Badillo; Cheryl Amour; Jose Vazquez; Terence Turner; Maria Tippet; Arlene Padilla; Peter Verschueren; Ruben Quintanar; Johny Onyshko, Jr.; Peter Mah; Teresa Lincoln; Walter Hanna; James A. Erwin III; Jorge De Los Reyes; Gregorio R. De La Rosa; Miguel A. Contreras; Nestor D. Ayson; Lilia Velasco; Darren Scira; Paul R. Sciarrillo, Jr.; Joel J. Ruiz; Andrew Rowe; Robert Rodriguez; Ray L. Rodriguez; Eric Obrecht; Lizabett Mesa; Peter M. Lopez; Myra M. Kellum; Timothy H. Hope; Joel Hernandez; Orlando T. Green II; Michael Gannon; Celeste Dula; David H. Chung; Jorge A. Cervantes, Jr.; Robert A. Canizales; Daniel J. Calderon; Robert A. Brophy; Lonya C. Britton; Jorge L. Arellano; Ricardo Acosta; Benny Abucejo; Alfredo Delgado; William Kipp; Elbert W. Hughes, Jr.; John Hankins; Jeri De La Torre; Antonio De La Torre; John P. Castillo; Jesus Zaragoza-Nunez; Van Thompson; Susan R. Solley; Eric M. Reade; Bridget Pickett; Sean Patcheak; Eloy Navarro; Michelle Lopez; Debbie Lopez; Jean L. Jimenez; Todd Holmberg;

Hugo Fanfassian; Lifernando Garcia; Christian J. Christensen; Dino Campodonico; James Agnole; Timothy B. Stack; Marsha Reyes; Robin Petillo; Richard Parks; Danh Ngo; Tina Matsushita; Marvin Sigfrido Mancia; Scarlett M. Nuno; Carlos Zaragoza; Fabio Taglieri; Thomas Ty Lo; Stephen Wilson; Robert E. Wade; Paul Rumer; Paul A. Ricchiazzi; Laura Preasmyer; Jeff S. Nolte; James Lumpkin; Ryuichi Ricky Ishitani; Victor E. Fain; Eddie Diaz; Mario Cubillos; Rosalyn E. Clark; Jefferey Booker; Michael Beloud; Thomas A. Willers; Raymond Terrones; Larry Oliande; Mark Maldonado; R. Maggie Luquin; Carlos Lozano; Tim M. Lai; Tai Kingi; David L. Hovey; Samuel Davis; Mark R. Cronin; Anthony Puchi; Michael Munjekovich; David A. Loera; Steven Lecours; Ronald G. Lopez; David R. Ortiz; Alex Delieuze; Diane Hawking; Patrick L. Murphy; Charles Surh; Ernest L. Sparkman; Donald Singer; Michael James Paris; Joseph Oseguera; Joseph Mueller; Mario Morales; Michael Miracle; William Joyce; Alicia Maria Hollenback; Thomas A. Burris; Robert Bermudez; Cynthia Bello; Rudy Avelar; Esther B. Vasquez; Kevin E. Love; Craig Allen; Erick Yepes; James Wallace; Gene Sur; William Romanelli; Randy Rico; Huy Quach; Brian L. Preston; Andrew A. Paredes; Kent Lau; Christopher Ralph Landry; Joe Kim; James Alan Harper; Angel Miguel Guerra; Rebecca Levy Gallegos; Jorge De Jesus III; Jeffrey D. Collado; Camille R. Armstead; Marcello Sabbatella; Leroi O'Brien; Gerardo Morales; Leonard Miller; Timothy C. Ledingham; Frank Dominguez III; Troy S. Abordo; Hector Aceves; Julio Alfonso; Arnel Asuncion; Andre Wright; William Arthur Segee; Jeffrrey B Pailet; Roger Michel; Richard R. Larson III; Paul Hendry; Carmen M. Gutierrez; Steven Grimmer; Efrain Contreras; Peter M. Cabral; Kristen Yeager; Raul Ramos; David Nunez; Philip Steven Clarke; Karolin Clarke; Adrian Gonzales; Mark Anthony Preciado; Byron Anthony Barnes; Michael

Estrada; Cezar Orozco; David James Hance; Federico Celis; Ramon Hernandez; Vaotupua Sefo Feula; Gerry R. Chamberlain; Matthew Lee Stuart; Philip James Ruiz; Juan Paz; Chatherine M. Sobieski; Paul Richard Bernd; Nicholas A. Titirigg; Richard McCauley; Walter A. Leiva; Craig Kojima; Eric Fukute; Gilbert Escontrias; Carlos Escobar; Clint S. Dona; Eric T. Briggs; Casey W. Cox; Anthony Gonzalez; Omar Veloz; Darius Lee; Edward J. Kim; Alicia Cordona Gilmer; Alan W. Gilmer; Blaca E. Desormaux; Nadya P. Bennyworth; Ronald E. Weaver; Jonathan Daniel Roman; Mark Miraglia; Milan A. Ayers; Steve W. Griffin; Martha Plata; Delaney Jones; Michael Apodaca; George Thomas Wilson, Jr.; William B. Limtiaco; Kevin Dunigan; Rex S. Wells; Deen Alcaraz; Lawrence Harold Mullaly; Richard M. Wells; Peter Paul Acosta; Merri Dallas; Mitchell Dan Lowlen; John F. Martinez; Anthony W. T. Kong; Carlos Alberto Ocegueda; Ramon Martinez; Joshua Nicholas Riggs; Travis Kupka; John Hovig Jizmejian; Michael D. Sledd; Carlos Medina Valdez; Richard Mark Carney; Timothy John Wienckowski; Alma Angelina Skefich; Rafael R. Mora; Mario Jacinto; Steven Gus Juarez; Stephanie L. Kraychur; Robert Joseph Crupi; Theodore Robert McHenry; Rhonda Howard; Ray Nimn Guerrero; Joshua Daniel Sewell; Angela Nicole Wittman; Sean Patrick Hart; Rachel Lynn Rodriguez; James C. Stoa; Ismael Contreras; Frank Ciezadlo; Sheila Congboy Rizzolo; Theresa Maria Stanford; Sonia Banuelos; Ruben Cardenas; Celia Komathy; Jeff Chiantaretto; Louis E. Lozano; Todd Baldwin; David Bambrick; Robert J. Bishop; Alicia Elliott; Darrell Hinson; Zoutan Mako; Mark Guardado; Arthur Antonio; Joshua Chong; Kelene Dale Gibson; Miguel Gomez; Michael Chapman; James Zourek; Brian Gingras; Teresa M. Velez; Dennis J. Duran; Brian Thayer; Art Talamante; Todd Chaney; Sandra J. Carlisle; Corey Dillard; Trasia R. Figueira; Carlos M. Figueira; John Collyer; Kevin

B. Study; Matthew Calleros; John B. Wilson; William Perez; James Townsend II; Vincent Aguirre; James M. Kaiser; Nicholas Rothemich; Robert Smey; Aaron Andrew Fougere; Anthony Charles Hotchkiss; Anthony F. Saenz; Michael Johnson; Brett Robinson; Blake Budai; Talya Andrel Higgs; David A. Akins; Joseph McDowell; Maria E. Heissel; Rogelio Perez; Andy A. Azodi; Pamela Green; Hurley Glenn Criner II; Daniel R. Del Valle; William J. McDonald; Sean Dempsey; David Krumer; John Brett Hayes; Ron Berdin; Francisco Javier Lopez; Christopher No; Steve Park; Joel Perez; Mike Richardson; Marie Tucker; Ya-May Christle; Roland J. Ramirez; Francisco Banuelos; Steven E. Johnson; John E. Campos; Gilberto Gaxiola; Frank Higareda; Zoutan Mako; James C. Grace; Sean M. Karmody; Christian H. Wecker; Stephen Nassief; Renee McAlonis; Jesse J. Estrada, Jr.; Daniel Logan; Patricia L. Blake; Greg Ortiz; Clinton T. Popham II; Guilermo Henry Mixer; Mark Allen; Stephen F. Slinsky; Ronny C. Mosley; David Hernandez; George Melvin McNeill; Manuel Ray Zapata; Andreas An; Gloria Jean Wood; Oscar Ontiveros; Michael Joseph Barrios; Perry Miguel Alvarez; A. J. Debellis; Victoria Collete Debellis; Wendi Leigh Berndt; Jeffrey John Martin; Juan Manuel Contreras; Donald Ernest Muniz; Rick Michael Rafter; Adrian Alexander Rios; Bryan Gary Gregson; Anthony R. Ochoa; Christopher Wayne Allen; David Alfredo Navas; Ignacio Rojas; Stephen Michael Musso; Orlando Martinez; Mark Pravongviengkham; Mitchell Allen Norling; Florence Estella Johnson; William F. Willis; Mary J. Fencl; Howard Choy; Juan Alfredo Ceja; Derek Richard Mousseau; Kathy Joyce Simpson; John Dennis Carey; Lawrence Phillip Jones; Pedro Zapata Reyes; Ralph Edward Emard; Philip Anthony Walters; Bradley Warren Mossie; Darrell Edward Sancho; Gregg Arthur Jacobus; Robert Arellano; Ian Carbonell; James Nicholas Rivera; Scott Edward Thielman; Douglas R. Long; Richard Antonio Lugo; Pedro Torres; Jesus David

Flores; Andy Joshua Leuridan; Jose Antonio Arellano; Gerardo Hernandez; John Elio Moreno; Fred L. Williams; Dewayne Davis; Joyce Ann Davis; Antonio Zamora; Charles Kevin Blomeley; Christina Marie Higuera; Timothy John McLaughlin; John Manuel Calzada; Bryan Harold Millner; Cory Phillip Meisner; Patrick Vincent Roman; Anthony Shane Solis; John Walter Davis; Bruce Parnell Stallworth; Brett Deoliveira; Dwight Christopher Nolan; Manuel A. Perez; David Manuel Romero; Clement Ruben Toscano; Paul Fedynich; Martin Robles; Tony Im; Jorge Martinez; Alan C. Henry; Brian Eric Brown; Wayne Albert Devey; Gregory Alan Glodery; Gilbert Pedregon; Lanita Elias; Paul Larry Skinner; Doreen Wilson; Osvaldo Ozzie Delgadillo; David Miner; Richard Ramos; Malcolm A. Thomas; Karen Crawford; Eric Christopher Johnson; Cari M. Long; Victor M. Eguez; Michael Villareal; Eric Alexander Melendez; Roy Reza, Jr.; Tony Di Paolo; John Carlo Blondo; Joseph Pollack; Michael Christopher Alexander-Fuller; Kerry Jon Suprenant; Julio Cezar Martinez; Angel Sambrano; David Alan Burrus; Francisco Eduardo Dominguez; Steven Frederick Gross; John X Vach, Jr.; Thomas Marvin Redshaw; Aldwin Vicencio; Julie R. McInnis; Brent A. Smith; William Waldo Sanders; John Stephen Enos; Elizabeth Luz Gudino; Jose Luis Padilla; Ellen Helene Cameron; Paul Joseph Wenter; Hector Manuel Urena; Daniel Anthony Suarez; Luis Angel Santiago, Jr.; Richard Philip Perez; Bradley Coulter Nielson; Richard Wayne Lockett; Thomas S. Lee; David Allen Javier; Susan Grizelda Inverno; Shawn Ryan Holguin; Thomas Carl Gustafson; Cheri Marie Doolittle; Jamal Esam Dawoudi; Medrardo Carranza; Hector Steven Carbajal; Antonio Vargas; Brent W. Riederich; Danny Steve Mendez; Gustavo Ariel Martinez; Cesar Rene Gonzalez; Gil James Cardinez; Samuel Joseph Briggs; Manuel Andujo; Richard Lance Adair; Bonnie Lynn Lehigh; Brian James McDonald; Travis

James Curtin; Mark Stephen Hubert; Charles Dwight Thomas; Patrick Shepard Robinson; Spiro John Roditis; George Timothy Leonard; David Ruben Cordova; Eva Jean Perry; Juan Gabriel Aguilar; Oswaldo A. Pedemonte; Sergio Dario Driotez; Vincent Neglia; Gerald M. Tomic; John Poland; Rudy Barrigan; Daniel M. Drulias; Corey Harmon; Ginger Harrison; Eric Lee Windham; Allen M. Kamal; Jim Tumbeird; Robert Alvarado; Gary Sales; Taylor Jordan McLaws; Felicia Spring McAdams; Sheldon J. Williams; Esther Nyape Reyes; Juan Octavio Reyes; Thomas Ewell Bibbs; Enrique Jurado; James Deric Carroll; Adam Niebergall; Antonia Serna; Thomas George Ralph; David John Hopkins; Sergio Ivan Sanchez; David Gene Ross; Jose Manuel Herrera; Kenneth Michael Snowden; Angela Doren Wienckowski; Victor Samuel Medrano; Brian Kelly; Stanley Alvin Kane; Jeffrey Campagna; Bret Andrew Banachowski; Leah Marie Baxter; Gerard Joseph Gibson; Teresa Y. Alonzo; Paul Sherney Williams; Adam Sockis Moore; Brian Jeffrey Campagna; Amie A. Guardado; Mark Austin Johnson; Sean Ramon McGee; Luis Enrique Jurado; Annissa Elaine Harsma; Gary Eugene Ross; Arthur Lee Simms, Jr.; Walter O. Lopez; Jae Hyun Sung; Eugene Sebastian Olea; James Craig Ferrell; Hector Guzman; Jerome Calhoun; Joseph Lee Gonzalez; Steven Douglas Sieker; Michael James Harrington; Michel Bonilla; Joe Quezada; Ricardo Gutierrez; Shane David Bua; Carlos Rodriguez; Timothy Jerome Morris; Kenneth Lee Price; Tyrone Roberto Acosta; Joseph Henry Cruz; William Mirza Simonoff; Louis Eduardo Marin; David Houlihan; Sophia Renee Castaneda; Christy Madera Chavarria; Maricela Ibanez; Bruce Leland Coss; Kathy K. Roditis; Mark Darin Lauderdale; Nguyen T. Do; Juan Carlos Rodriguez; Luis Michel Bonilla; Juan Israel Zendejas; Lisa Michelle Kelly; Matthew William Jones; Benjamin David Gutierrez; David James Craig; Rudolph Rivera, Jr.; Enrique Robledo, Jr.; John Ammons; Arturo

Mares; Roger I. Watson; Veronica Padilla; Anthony Green; Luz Elba Montero; Unneyung Kevin Ree; Willard David Thomason; Brian Michael Corwin; Michael Thomas Judge; Alan C. Henry; Jennifer Susanne Howlett; Eric Alan Hurd; Tom Leo Chavez; Jimmy Chong; Shawn David Crabbe; Teresa L. Evans; Jennifer Nicole Blomeley; Thomas Anthony Bojorquez; Arthur Anthony Castro; Evannry Maria Arocho; David Gibson Ashley; Lance Adam Blake; Sally Elizabeth Santamaria; Feliciano Tyrone Wilson; Claudia Carmen Castruita; Nathan Paul Ewert; Ignacio Guitnon; Eric Hernandez; Lisa Marie Duran; Daniel Adam Garcia; Michael Joseph Sullivan; Larry Brown; Teresa Lynn Anderson; Howard D. Mathews; James J. May; Michael Kilpatrick; Michael Lopez; Mark Manuel Mascareno; Kennith Joseph Ferro; Valendine Scot Flores; Ronald Harrell; Adam Senall Green; Eric Sean Mollinedo; Steve Soon Chung; Edan Michael Sheklow; Bobby Romo; Omar Lamont Davis; Crystal Nova Davis; Matthew Kevin Murray; Maligi Agatonu Nua; Oscar Alejandro Ordonez; Jeremy Jay Paciokowski; Leo Perez; Leopoldo Rey; Corbin Joseph Rheault; Arthur Reyna; Joaquin Rodriquez, Jr.; Jose Romo; Sergio Navarro Salas; Diana M. Salcido; Robert Louis Schlesinger; Darius Ian Trugman; Christopher Albert Vasquez; Sharlon Kojro Wampler; David Wayne Yep; Ryan V. Icagan; Michael Anthony Thompson; James Joseph Dickson; David Rodriguez; Carlos Enrique Torres; Jonathan David Pasillas; Adrianna Marie Prado; Ivan Guillermo; Donni Lynn Ellison; Freddie Robert Ackerley; Joseph Pollack; James Michael Bland; Garardo Loza; Adam Benjamin Loo; Kevin L. Giberson, Jr.; Dong S. Park; Steven Aguilar III; Michael W. Schneider; Raymona K. Moussa; Francois Joseph Wise; Diana Zamora; Carlos Alberto Figueroa; Cesar Ignacio Guitnon; Ruben Orlando Vega; Marlon Gomez; Oscar Alejandro Castellanos; Leeann Jones; Omar Franco; John Thomas Strasner; Robert Joseph

Martinez; Luis Navarette; Troy Orion Zeeman; Teresa Renae Pikor; Darlene Myree Shelley; Michael Clark Blake; Jorge Arturo Alfaro; Thomas Anthony Garcia; Jesse Joe Reyes; Juan Carlos Chavez; Brian Wayne Wilson; Richard J. Knopf; Dennis John Shaw; Raymond G. Wong; Gisselle Espinoza; Martin M. Espinoza; Brian Anthony Harris; Marc Michael Ferris; Brent Alan Smith; Michael Patrick Flannery; Theodore Jara; Ezequiel Barraza; John Manuel Cuenca; Christopher Smythe; Mario E. Figueroa, Jr.; William Chester Lantz; Miguel Alfonso Terrazas; Jose Lujan Reyes, Jr.; Douglas Daniel Roach; Joseph Eric Chavez; Victor Manuel Arrelano; Curtis L. Davis; Berzon Angcao Distor; Mark Brian Stratton; Michelle Rachel Eskridge; Jeffrey Brian Beacham; Jeremy Marshall Olson; Eric Craig Williams; Peter John Jack; Magdaleno Gomez; Sam Saul Salazar; Craig Stephen Adams; Gregory Coronado Trevino; Rudy Jose Quintanilla; Phillip Lawrence Miller; Ray John Martinez; Raymona Villalobos; Ronald Wayne Gray; Gary Edward Leffew; Ara Vidal Hollenback; Carlos Olmos; Steve Sainz; Richard Keith Larimer; Salvador Lizarraga; Gabriel Rivas; Jeff Paul Quinton; Marco Antonio Munoz; Wayne Kerry Guillary; Benjamin Martin Tran; Todd H. Bracht; Lester M. Freeman; Spendora Rene Hadnot-Ricks; Cedric Raynard Ingram; Young Woo Jheon; Leonard Roland Perez; David Nabil Habibi; Timothy Jason Bohac; Sonny Kynoi Patsenhann; Steven Costas Kotsinadelis; Oscar Alberto Garza; Phillip Henry Zalba; Gilbert Sanchez; Gina M. Bracht; Michael Solis; Samuel Adam Arnold; Edward Beltran Zamora; Laura Gerritsen; Caesar David Gonzalez; Darren Hill; Brian W. Tyndall; Cesar I. Guitron; Kevin W. Pierce; Sidney Dean Hodges; Lisa M. Duran; Timothy R. McRath; Adrianna Prado; Cesar Mata; Taaj Muhammad; Roy Reza, Jr.; Jeffrey S. Mulheim; David Riddick; Francisco Macias; Omar L. Davis; James Franciscus Martinez; Alfonso Cisneros; Alex Hoffmaster; Patricia A. Stout; Jaime

Chacon; Stephen Yurochko; Timothy Hwan Kim; Edward Richard Petterez; Robert Carlos Celaya; James A. Kukkok; Robert Michael Villalobos; Edward N. Acosta; Stacie Lynn French; Randolph Clifford Agard; James A. Stout; Daniel Garrett Thompson; Kenneth Steven Bartnicki; Scott Donald Brown; Randy Scott Goens; Keely C. Coleman; Jason George Jacobson; Larry Lee Johnson; Jeramie Andrel Schulze; Dontae Phillips; Manuel Esqueda; Luke Baxter Walden; Pedro Topete Cabunoc, Jr.; Miguel Angel Nunez; Del Jester; Audrie Parrillo; Eric Wayne Holyfield; Lori A. Lee; Ronald F. Grijalba; Michael B. Calhoun; Dino Angelo; Kurt D. Thurston; Francisco Carrillo; Mario Aldo Parrillo; Frank Preciado; Veronica Inez Saucedo; Scott Michael Vostad; Lolita Bermudez; Michael Tolmaire; Tamara A. Baumann; Juan P. Silva; Silvia Corral; Gabriel Holguin; Vincent Henson; Teresa Zundel; Jim Tumbeiro; Edward L. Kellogg; Benjamin E. Aguilera; Samuel Y. Cho; Dennis Nguyen; Hyong S. Perkins; James P. Moon, Esquire, Attorney; Jonathan M. Kincaid; Rufus R. Ward; Ronnie M. Romero; Edward Heredia; Joseph Adragna; Hector Ibarra; Bennie Boatwright; Kevin W. Smith; Matthew Casalicchio; Spree Desha; Divinity; Eric Jennings; Steve Grimes; Heath Adams; Robert Brogelman; Jay Vargas; James Edwards; Luis Delacruz; Robert Worrall; Robert Scutaru; Lorna Cavin; Peter Ponich; Robert Olmos; Augusto Mariano; Jeremy Fink; Donald Bender; Hector Chaidez; Alfredo Rosales; John Long; Mika Kuroiwa; Christopher Cortijo; Habib Munoz; Deshaun Hall; Dominick Fuentes; Chris Kliever; Osvaldo Gonzalez; Sandra Garcia; Ralph Alvarez; Rafael Tobar; Timothy Tully Scott I; Kenneth Santolla; David Perry; Ruthann Scott; Alexander Villalpando; Marian Bausley; Daniel Rios; Gustavo Camacho; Jonathan Miller; Susan Herold; Patrick Higa; Brian Peel; Arca; Salvatore De Bella; Roy Agbanawag; Earnest Williams; Steve Morales; Rudy Gonzalez; Michael Quezada; Ricardo Rivera; Alan

Kreitzman; Steven Lemmer; Christopher Green; Claudia Mendoza; David Brandstetter; Sunny Sasajima; Michael Graham; Horacin Aguirre; Suzanne Vukovic; William Monahan; Clinton T. Weir; Edgar Cruz; John E. Redican; Pernell Taylor; John Armando Warren; Hugo Trujillo; Jesus Ramirez; Dennis P. Kilcoyne; Keith H. Spencer; Caesar David Gonzalez; James T. Willis; Binh Nguyen; Charles Giuliani; Grace Garcia.

*Defendant-Appellee*: City of Los Angeles.

### *Mata v. City of Los Angeles*, No. 16-55002

*Plaintiff*: Cesar Mata

*Plaintiffs-Appellants*: Richard D. Alba; Jose Angulo; Francisco Arredondo; Jay G. Batson; Albert Bertieri; Jeffrey Burnley; Robert Calzadillas; Jose Carias; Lucen A. Daigle; Miguel Dominguez; Jess H. Faber; Austin B. Fernald; Mario Flores; Daniel Garcia; Joseph Getherall; Steven Gomez; Eric Hermann; Nahan R. Hernandez; Patrick A. Higa; Gregory Jacks; Ruben S. Jimenez; Allan Krish; Irma E. Krish; Darryl L. Lee; Rafael Lomeli; Michael McLann; Alonso Menchaca; Bryan Mivglaz; Trisha Mivlgaz; Abel Munoz; Donald R. Ornelas; Dana Ouiatt; Young W. Pak; Lee Perry, Jr.; David Petersen; Michael R. Peterson; Ryan S. Powell; Pablo A. Rivera; Henry Romero; Manuel L. Rumion; David Sabedra; Darrell Sanomo; Brian T. Schneider; Ruthann Scott; Sven Steffensen; Shad Stilkey; Patricia Suarez; Jonathan Sugam; John Talbot; Fred A. Tredy; Adan Urena; Onam Urena; Miguel Vaca; Miguel A. Vallejo; Rita Vallejo; D. Michael Vrolyks; Neil Warren,; Matthews O'Williams; Joe R. Witty.

*Defendant-Appellee*: City of Los Angeles.